**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TRESSA SHERROD, *et al.*, | : | |
| | : | CASE NO. 3:14-cv-00454 |
| Plaintiffs, | : | |
| | : | Judge Walter H. Rice |
| v. | : | Magistrate Judge Michael J. |
| | : | Newman |
| OFFICER SEAN C. WILLIAMS, *et al.*, | : | |
| | : | |
| Defendants. | : | **PLAINTIFFS' BREIF IN** |
| | : | **OPPOSITION TO RENEWED** |
| | : | **MOTION TO STAY OF** |
| | : | **DEFENDANTS OFFICER** |
| | : | **SEAN C. WILLIAMS AND** |
| | : | **SERGEANT DAVID M. DARKOW** |

Plaintiffs understand that this Court has previously ruled the stay, which defendants Williams and Darkow now seek to extend, struck a measured balance between the needs of the plaintiffs to prosecute this civil action and needs of the defendants to preserve their rights against self-incrimination under the Fifth Amendment to the United States Constitution.   However, plaintiffs believe that the relief sought—a stay of indefinite duration--goes too far under the unique facts of this case, and would ask this Court to terminate the stay in favor of the depositions being conducted.  Because Williams and Darkow, as suspects in the state criminal investigation, freely answered questions from law enforcement concerning the shooting, without raising any Fifth Amendment concerns whatsoever, their feigned disquiet about self-incrimination in this context is suspect and should not be accepted at face value.

Plaintiffs have several concerns with the need for the stay altogether, given that both defendants have previously waived, or failed to exercise, their rights against self-incrimination

1

on multiple occasions, and that the vast majority of questions that the defendants would be asked in deposition would not elicit answers that might criminally incriminate the officers.  Further, plaintiffs have reasonable concerns that defendant Darkow is not currently being investigated and the affidavit of criminal defense attorney Vincent Popp is so vague as to deprive the parties of any meaningful understanding as to the existence of or extent to any current federal investigation as to these moving defendants.

I.      Defendants Williams and Darkow have previously waived their rights against self-incrimination.

On at least *six* prior occasions, and perhaps as many as *eight*, Williams and Darkow gave written and verbal statements to law enforcement, (some with their attorney present) and have explicitly waived or failed to assert their Fifth Amendment rights on *each* occasion. (See attached Exhibits A-G). In those interviews, they were asked questions about the incident where Williams shot and killed John Crawford, and not one time did they or their attorney object to any question or raise the Fifth Amendment right at all. (See attached Exhibits A, B, D, E, and G). Thus, plaintiffs question the sincerity of Williams and Darkow's request for an order that would indefinitely prevent the family of John Crawford from asking their own questions, which, of course, the family needs answered to support their civil claims against these defendants and the other Beavercreek defendants.

A.    Williams' History of Waving his 5th Amendment Rights

On the night of August 5, 2014, shortly after killing Mr. Crawford, Williams typed a two-page report about what he recalled of the shooting. (Attached hereto as Exhibit A). He did not raise any Fifth Amendment concerns at that time.  (See attached Exhibit A).

That same evening, Beavercreek police captain Eric Grile interviewed Williams, who by this time was represented by counsel, attorney Vincent Popp, and Williams failed to exercise the right, despite being asked about the shooting.  (See attached Exhibit B).

Three days later, defendant Williams voluntarily submitted to an investigative interview conducted by an agent of the Ohio Bureau of Criminal Investigation ("BCI"). In that interview, despite being told the interview was in furtherance of the criminal investigation into the shooting of John Crawford, defendant Williams voluntarily signed a Miranda waiver with the advice of his attorney. (See attached Exhibit C).   Williams answered questions about the shooting for nearly an hour and forty-five minutes, and never once did he or his attorney assert the Fifth Amendment in response to any question. (See attached Exhibit D).

B.  Darkow's History of Waving his 5th Amendment Rights

For Sergeant Darkow, the frequency of waiving, or failing to exercise, his Fifth Amendment right is nearly identical to that of defendant Williams.  On August 5, 2014, in the evening after Williams shot and killed John Crawford, Darkow was similarly interviewed by Captain Eric Grile of the Beavercreek Police Department, with Darkow's attorney, Vincent Popp, present. Despite being asked about how Mr. Crawford was shot and killed, neither Darkow nor his attorney exercised a Fifth Amendment protection. (See attached Exhibit E).

On August 8, 2014, Darkow was also interviewed by an agent of the Ohio BCI in conjunction with its criminal investigation into the killing of John Crawford.  Darkow was interviewed with his attorney present and similarly signed a Miranda waiver with advice of counsel. (Attached hereto as Exhibit F).  In the two hour interview, which asked detailed questions about Mr. Crawford's killing, neither Darkow nor his attorney asserted the Fifth Amendment a single time. (See attached Exhibit F).

3

Finally, on August 18, 2014, Darkow gave a two-paged typed statement of his recollection of the events that led to the homicide of John Crawford, and never raised any Fifth Amendment concerns in that statement either.  (See attached Exhibit G).

Of course, Williams and Darkow also testified in front of the state grand jury, but plaintiffs have no knowledge whether either exercised his Fifth Amendment rights in that proceeding. If they did not raise the right against self-incrimination, that would mean the two defendants have given *eight* prior accounts of Mr. Crawford's homicide without raising any Fifth Amendment concerns whatsoever.  Remarkably, when putting all of these statements together, Williams and Darkow have freely given at least *six,* and possibly *eight,* accounts of the shooting, with their liberty theoretically in jeopardy, and yet they failed to exercise their rights against self-incrimination a single time.

Attorney Popp was present during at least four of the interviews (it is unknown whether Mr. Popp helped Williams and Darkow prepare their typed statements), and *counseled his clients to waive their rights against self-incrimination, while the state criminal investigation was pending*. Mr. Popp also failed to exercise the right on behalf of his clients in response to a single question asked during any of these interviews.  With these extraordinary facts, where the criminal lawyer has yet to see a single question that would justify invoking the Fifth Amendment, the foundation of defendants Renewed Motion crumbles and gives plaintiffs every reason to doubt the *bona fides* of Williams and Darkow's request to stay their depositions indefinitely because of concerns about self-incrimination.  It defies common sense to think suspects (Williams and Darkow) in a homicide investigation would freely waive their rights against self-incrimination in multiple interviews with two different law enforcement agencies, but then ask for a complete, indefinite stay based on that unexercised right regarding *every*

4

*question* the plaintiffs might ask in this civil matter. Plaintiffs can be forgiven for doubting the sincerity of Mr. Popp and his clients under these unique circumstances.

Simply put, plaintiffs believe that the Renewed Motion is being offered for delay rather than for any legitimate concerns regarding self-incrimination. If self-incrimination were a legitimate concern, it would have been raised in the state proceedings when Williams and Darkow were the *subjects* of the criminal investigation. In other words, the actions of Williams and Darkow in speaking without reservation in at least *six,* if not *eight,* other interviews, are more reliable indicators of the (lack of) necessity for a stay than the self-serving statements of their criminal lawyer, who has yet to see a question that implicates the Fifth Amendment. The extraordinary relief defendants Williams and Darkow seek in their Renewed Motion is undermined by their willingness to speak freely without exercising their Fifth Amendment rights on every occasion they have been asked concerning the events of August 5, 2014.

II.      Most of the Deposition Questions Will Not Elicit Fifth Amendment Concerns.

Plaintiffs anticipate asking questions in the depositions that will address the following non-exhaustive list of topics: background, training, discipline, retraining, prior use of force (response to resistance), fitness for duty, department rules and guidelines, citizen complaints pertaining to prior incidents, as well as the circumstance concerning John Crawford's homicide. The majority of these questions could not possibly elicit a Fifth Amendment challenge. And, given the overwhelming experience these officers have answering questions concerning the homicide in the context of a criminal investigation, without raising the Fifth Amendment even once, it is difficult to imagine any questions eliciting a protected response in this civil case. But, if the right were to be periodically raised, its interference with fact gathering would be slight. As a result, plaintiffs believe the concerns expressed by the defendants in their renewed motion are

dramatically overblown, if not insincere. Thus, plaintiffs would ask this court to deny the Renewed Motion.

However, if this court were inclined, the depositions could be supervised by a judicial officer, so that if an unlikely objection is raised on Fifth Amendment grounds, it could be ruled on in real time.

III. **The Affidavit of Attorney Popp Fails to Reveal If Darkow or Williams are Even Under Investigation.**

As this Court is aware, defendant Williams was the actual shooter who killed John Crawford, while Sergeant Darkow did not find it necessary to pull the trigger during the encounter. Under these circumstances, it is difficult to imagine how Darkow would be subject of any criminal or civil rights investigation. However, the affidavit of Mr. Popp, which is the sole evidence submitted by Williams and Darkow in support of the Renewed Motion to Stay, is so vague as to be meaningless. Nowhere in the affidavit does Mr. Popp state explicitly that either of his clients is the subject of a federal civil rights or criminal investigation. Instead, he obliquely mentions that the "investigation" is ongoing. Tellingly, the affidavit leaves unanswered the question of who or what is being investigated. Speculatively, the investigation may be targeting the City of Beavercreek, the Beavercreek Police Department, Officer Williams, Officer Darkow, or some unknown person or entity. Or, it may just be focusing on Officer Williams. The point is, Mr. Popp apparently does not know who the target of the investigation is, because he did not say in his affidavit, and the plaintiffs certainty do not know. Nor does anyone know when the investigation may end.

With this dearth of information, such extraordinary relief—a perpetual stay of discovery— places an unfair burden on the plaintiffs. This Court should decline such an extraordinary request, particularly one that is based on such flimsy evidence and betrayed by the officers own

6

prior actions of consenting to interviews without reservation, and allow the plaintiffs to depose

defendants Williams and Darkow.

Respectfully submitted,

*/s/ Dennis P. Mulvihill*

**Dennis P. Mulvihill (0063996)**
**WRIGHT & SCHULTE, LLC**
23240 Chagrin Blvd., Suite 620
Cleveland, OH 44122-5468
(216) 591-0133
(216) 591-0622 facsimile
dmulvihill@yourlegalhelp.com
*Counsel for Plaintiff, Tressa Sherrod, et al.*

*/s/ Shean Williams*

**Shean Williams (Ga# 764139)**
**The Cochran Firm Atlanta**
Admitted Pro Hac Vice
127 Peachtree Street, Suite 1400
Atlanta, Georgia 30303
Telephone: (404) 222-9922
Facsimile: (404) 222-0170
sdw@sistrunklaw.com
*Counsel for Plaintiffs*

*/s/ Samuel Starks*

**Samuel L. Starks (Ga# 676515)**
**The Cochran Firm Atlanta**
Admitted Pro Hac Vice
127 Peachtree Street, Suite 1400
Atlanta, Georgia 30303
Telephone: (404) 222-9922
Facsimile: (404) 222-0170

7

sstarks@cochranfirmatl.com
*Counsel for Plaintiffs*


*/s/ Michael L. Wright*
_____

**Michael L. Wright (0067698)**
**Wright & Schulte, LLC**
130 W. 2nd Street, Suite 1600
Dayton, OH
(937) 435-7500
(937) 435-7511 facsimile
mwright@yourohiolegalhelp.com
*Counsel for Plaintiffs*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1st, 2016, I electronically filed the foregoing with the clerk of the court using the CM/ECF system.

/s/ Dennis P. Mulvihill

_____

Dennis P. Mulvihill (0063996)