IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRESSA SHERROD, individually
and as Executrix of the Estate of          :
John H. Crawford, III, *et al.*

         Plaintiffs,          :          Case No. 3:14-cv-454

         v.          JUDGE WALTER H. RICE

OFFICER SEAN C. WILLIAMS, *et*          :
*al.*,

         Defendants.

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT WAL-MART'S MOTION FOR SUMMARY
JUDGMENT (DOC. #186)

---

John H. Crawford, III ("Crawford" or "Decedent"), a shopper at the Wal-

Mart store in Beavercreek, Ohio, was shot and killed by Beavercreek Police Officer

Sean C. Williams ("Williams"), after Ronald Ritchie, a fellow shopper, called 911 to

report that Crawford was waving a black rifle around and pointing it at people

inside the store.  It was later discovered that the "rifle" that Crawford was carrying

was an unpackaged Crosman MK-177 pellet rifle that Crawford had picked up in

Wal-Mart's sporting goods department.

The Executrix of Crawford's Estate, Tressa Sherrod, together with John

Crawford, Jr. (Decedent's father), and LeeCee Johnson (the mother of Decedent's

two minor children), filed suit against Officer Williams, Beavercreek Police Sergeant

David M. Darkow ("Darkow"), Beavercreek Police Chief Dennis Evers ("Evers") and

the City of Beavercreek (collectively, "the Beavercreek Defendants"), and against Wal-Mart Stores East, L.P. and Wal-Mart Stores, Inc. (collectively, "Wal-Mart"), asserting a variety of federal and state claims.

On January 15, 2019, the Court issued a Decision and Entry sustaining in part and overruling in part the Beavercreek Defendants' motion for summary judgment, Doc. #129, and overruling Plaintiffs' motion for partial summary judgment on some of the claims against the Beavercreek Defendants, Doc. #169. *See* Doc. #240. This matter is currently before the Court on Wal-Mart's Motion for Summary Judgment, Doc. #186.

## I.    Background and Procedural History

Wal-Mart sells Crosman MK-177 pellet rifles, which are designed to look like real AR-15 semi-automatic assault rifles. Doc. #260, PageID#18666, 18710; Doc. #258, PageID##18461, 18470. Unlike toy guns, which have an orange plastic cap on the barrel so that they can be distinguished from real guns, the MK-177 pellet rifles have no orange cap. Doc. #258, PageID#18459. Each MK-177 pellet rifle is shipped to Wal-Mart in a box, designed so that the customer can easily flip the lid open to remove the pellet rifle and handle it prior to deciding whether to purchase it. Doc. #222-1, PageID#15181.

In contrast to real firearms, which are heavily regulated and are secured behind a locked counter, the MK-177 pellet rifles are completely unsecured, openly

2

displayed on shelves in the sporting goods department at Wal-Mart. Doc. #260, PageID#18662, 18670, 18703. Each box contains a warning stating that the pellet rifle is not a toy and may cause serious injury or death. The warning further states, "DO NOT BRANDISH OR DISPLAY THIS AIRGUN IN PUBLIC—IT MAY CONFUSE PEOPLE AND MAY BE A CRIME. POLICE AND OTHERS MAY THINK IT IS A FIREARM." Doc. #186-3, PageID#12346.

Unfortunately, that is exactly what happened on August 5, 2014. Shopper John Crawford, III, entered the Beavercreek Wal-Mart store at approximately 8:09 p.m. At 8:18 p.m., he entered the sporting goods department and walked down an aisle where he picked up a Crosman MK-177 pellet rifle. Doc. #186-1, PageID#12342.

Surveillance video shows that when Crawford left that aisle with the MK-177, it was not in its box. It is not clear whether he removed the pellet rifle from its box or whether the rifle was lying unpackaged on the shelf. However, the video footage shows that Crawford was talking on his cell phone at the time and there is no evidence to support a finding that he stopped, put the phone down and opened a box to remove the pellet rifle. In fact, the video footage shows that he appears to simply grab the pellet rifle as he walked past it, barely breaking his stride. Doc. #222-1, PageID##15148-49. Moreover, video surveillance footage from two days earlier, on August 3, 2014, shows other store patrons "who appear to be holding the same or a similar unpackaged rifle in the same aisle where Mr.

Crawford picked up a rifle and removed it from the sporting goods section on August 5, 2014." Doc. #222-6, PageID#15409.

Crawford left the sporting goods department, carrying the unboxed pellet rifle, and headed toward the pet department. Corey Brooks, a Wal-Mart employee who was working in the adjacent paint department, saw Crawford and was concerned that someone might mistake the pellet rifle for a real firearm. Doc. #219, PageID##13451-52. He called a co-employee, Michaela Menz, and asked that management be notified so they could locate Crawford. *Id.* at PageID#13461. Menz immediately paged a manager. Doc. #226-1, PageID##15834, 15942.

At 8:21 p.m., two Wal-Mart managers, Denise Wolford and Jessica Thomas, began searching for Crawford. They did not see him in the sporting goods department so they started walking together toward the grocery section of the store to look for him there. Doc. #223-1, PageID#15556; Doc. #225-1, PageID##15799-800. Thomas testified that, because she did not believe that Crawford posed any immediate danger, she did not treat this as an urgent situation. Doc. #225-1, PageID#15800.

Unbeknownst to the two managers, at about the same time, Ronald Ritchie, another Wal-Mart shopper, saw Crawford with the pellet rifle and called 911. *Id.* at PageID#15805; Doc. #122-1. He reported that a black male was in the pet department, waving a black rifle, pointing it at people and other objects. He also

told the dispatcher that the man was trying to load the rifle. Doc. #122-1, PageID##2837-44.

Beavercreek police officer Sean Williams and Sergeant David Darkow responded to the 911 dispatch. Based on what Ritchie had told her, the dispatcher "made an assumption" and inaccurately informed the officers that Crawford had loaded the gun "with bullets." Doc. #120, PageID##2319-20.

Williams and Darkow entered the store at 8:26 p.m., believing that this could be an "active shooter" situation. At this point, Wal-Mart's managers had not yet located Crawford and did not know that the police were there. When Williams and Darkow entered the store, nothing appeared to be amiss. Doc. #121, PageID#2469; Doc. #134, PageID##2946-47. They made their way to the pet department where they found Crawford looking at the shelves. In his right hand, he was holding what appeared to be a loaded AR-15 semiautomatic assault rifle, with the muzzle pointed at the floor. In his left hand, the hand closest to the officers, Crawford held a cell phone to his ear. The officers, however, did not notice the phone. Doc. #134, PageID#2947-50, 2961.

Sergeant Darkow yelled at Crawford to "Drop the gun!" *Id.* at PageID#2953. Less than two seconds later, as Crawford turned his head to look at Darkow, Officer Williams fired two shots, killing Crawford. Doc. #65, PageID#10852. Williams maintains that Crawford was turning toward them with

the rifle, in an aggressive manner, posing an immediate threat of serious physical harm.  Doc. #121, PageID##2440, 2444-45, 2459.

Tressa Sherrod, Executrix of Crawford's estate, and some of Crawford's family members filed suit against Officer Williams, Sergeant Darkow, Beavercreek Police Chief Dennis Evers, and the City of Beavercreek, asserting numerous federal and state law claims.  Plaintiffs also asserted the following seven state law claims against Wal-Mart: Negligence (Count 11); Premises Liability (Count 12); Survivorship (Count 13); Wrongful Death (Count 14); and Loss of Consortium (Counts 15-17).  The Court has supplemental jurisdiction over these claims.  Wal-Mart has now moved for summary judgment on Counts 11 (Negligence), 12 (Premises Liability) and 14 (Wrongful Death).  Doc. #186.

## II.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

6

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable

7

inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.    Analysis

### A.    Plaintiffs' Claims

Count 11 of the Complaint asserts a claim of negligence. Plaintiffs allege that Wal-Mart owed John Crawford, III, a business invitee, a duty to use ordinary care for his safety and to keep the premises and conditions at the store in a reasonably safe condition. Plaintiffs further allege that Wal-Mart acted negligently in: (1) its policies concerning the display of pellet rifles; (2) failing to secure the pellet rifle; and (3) failing to warn Crawford and obtain the pellet rifle from him when it became known to Wal-Mart employees that he was holding it. Plaintiffs

8

maintain that Wal-Mart knew or should have known that if a business invitee picked up the MK-177 pellet rifle, it would place that invitee in danger from the actions of others who mistakenly believed that the gun is real and that the invitee posed a danger to others. Plaintiffs maintain that, as a direct and proximate result of Wal-Mart's policies, actions and omissions, 911 caller Ronald Ritchie and Officer Williams both believed that Crawford posed a serious danger to others, leading Officer Williams to shoot and kill Crawford. Doc. #1, PageID#21.

Count 12 of the Complaint asserts a claim of premises liability. Plaintiffs allege that Wal-Mart had a duty to take reasonable measures to monitor individuals present at its stores, and that Wal-Mart negligently failed to take such measures and failed to determine that Crawford was holding a realistic-looking gun. As a direct and proximate result of this negligence, Crawford was shot and killed. *Id.* at PageID#22.

Count 13 asserts a claim of survivorship under Ohio Revised Code § 2305.21. Count 14 asserts a claim of wrongful death under Ohio Revised Code § 2125.01. Counts 15 through 17 asserts claims of loss of consortium.

### B.    Negligence (Count 11) and Premises Liability (Count 12)

Wal-Mart has moved for summary judgment on the claims of negligence and premises liability asserted in Counts 11 and 12 of the Complaint. Both claims arise out of alleged breaches of duties owed by Wal-Mart to John Crawford as a business invitee. A "business invitee" is defined as one who is on the premises of

9

another, by express or implied invitation, "for some purpose which is beneficial to the owner." *Snyder v. Giant Eagle*, 2016-Ohio-708, at ¶10, 2016 WL 764016, at *2 (8th Dist. Feb. 25, 2016) (internal quotations omitted).

As a business invitee, Wal-Mart owed Crawford: (1) a duty to use care not to injure him by negligent activities; (2) a duty to warn him of latent dangers known by Wal-Mart; and (3) a duty to inspect the premises to discover dangerous conditions and take reasonable precautions to protect him from foreseeable dangers. *Perry v. Eastgreen Realty Co.*, 53 Ohio St. 2d 51, 52, 372 N.E.2d 335, 336 (1978). Ohio courts have separated these duties into claims arising from "static or passive conditions, such as preexisting latent defects," and claims arising from "active negligence by act or omission." *Simmons v. Am. Pac. Enters., LLC*, 2005-Ohio-6957, at ¶20, 164 Ohio App.3d 763, 770, 843 N.E.2d 1271, 1276 (10th Dist.); *Cornell v. Miss. Lime Co.*, 2017-Ohio-7160, at ¶53, 95 N.E.3d 923, 935 (7th Dist.).

In order to succeed on a claim of negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and injury proximately resulting from the breach. *Loudin v. Radiology & Imaging Servs., Inc.*, 2011-Ohio-1817, ¶ 13, 128 Ohio St. 3d 555, 559, 948 N.E.2d 944, 949. A premises liability claim is a subset of a negligence claim. A premises liability claim simply arises out of a condition on the property as opposed to arising out of an act or omission that results in injury. A premises liability claim requires the same showing as a

negligence claim. *Payne v. Ohio Performance Acad., Inc.*, 2017-Ohio-8006, ¶ 17, 98 N.E.3d 1078, 1085.

Here, Plaintiffs allege that Wal-Mart failed to keep its premises in a reasonably safe condition for its business invitees. More specifically, Plaintiffs allege that Wal-Mart was negligent in failing to exercise care in the manner in which it displayed the pellet rifles, in failing to return the unpackaged pellet rifle to its box, in failing to warn Crawford of the danger associated with carrying an unpackaged pellet rifle in the store, and in failing to obtain the unpackaged pellet rifle from Crawford before he was shot.

### 1. Duty

The first element that Plaintiffs must prove is the existence of a duty on the part of Wal-Mart. This is a question of law for the Court to determine. *Mussivand v. David*, 45 Ohio St. 3d 314, 318, 544 N.E.2d 265, 270 (1989). It is undisputed that, as a business invitee, Crawford was owed certain duties, as discussed above. There are, however, certain caveats.

In its motion for summary judgment, Wal-Mart argues that, because Plaintiffs contend that Officer Williams' conduct was "criminal" in nature, Plaintiffs must be held to a higher standard and prove that Wal-Mart had a duty to protect Crawford from the criminal act of a third party. Wal-Mart further argues that, because the dangers associated with carrying a pellet rifle are "open and obvious," it had no duty to protect him.

11

## a. Nature of Officer Williams' Conduct as Affecting Negligence Standard

In its Motion for Summary Judgment, Wal-Mart notes that, in their Complaint, Plaintiffs asserted a claim of Assault and Battery against Officer Williams and Sergeant Darkow. In response to Wal-Mart's interrogatory asking "[d]o you contend that the actions of Defendant Williams, in relationship to Mr. Crawford's death, were criminal?", Plaintiffs responded "Yes." Doc. #186-6, PageID#12357. Wal-Mart maintains that Plaintiffs' answer to the contention interrogatory is binding.[1]

Based on the foregoing, Wal-Mart argues that, because Plaintiffs contend that Williams' conduct was *criminal*, Plaintiffs are held to a higher burden of proof, and cannot recover from Wal-Mart without proving that Wal-Mart owed a duty to protect its business invitee, John Crawford, from a criminal act. In Ohio, such a duty arises only if the criminal act is foreseeable based on the totality of the circumstances. *Heimberger v. Zeal Hotel Grp., Ltd.*, 2015-Ohio-3845, ¶ 18, 42 N.E.3d 323, 330.

> "The totality of the circumstances test considers prior similar incidents, the propensity for criminal activity to occur on or near the location of the business, and the character of the business." *Id.* "Three main factors contribute to a court's finding the evidence

---

[1] "'Contention' interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims." *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998), aff'd sub nom. *Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198 (1999).

12

insufficient to demonstrate the foreseeability of a crime as a matter of law: (1) spatial separation between previous crimes and the crime at issue; (2) difference in degree and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence." *Id.* at ¶ 9. "Because criminal acts are largely unpredictable, the totality of the circumstances must be 'somewhat overwhelming' in order to create a duty." *Id.* at ¶ 7, quoting *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 194, 583 N.E.2d 1071 (8th Dist.1990).

*Id.* at ¶ 18 (quoting *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 06AP-209, 2006-Ohio-5518, 2006 WL 3008478). Wal-Mart maintains that, absent any evidence of a previous factually-similar incident at a Wal-Mart store or any other retail establishment, Plaintiffs cannot prove that Wal-Mart had a duty to protect Crawford from Williams' criminal conduct.

Plaintiffs deny that this is the appropriate test. They note that their Complaint, which is one for money damages, does not allege that Williams violated any *criminal* law in shooting Crawford. The Assault and Battery claim contained in Count I of the Complaint is an *intentional tort* claim.[2] Moreover, although Plaintiffs did indicate, in their answer to Wal-Mart's interrogatory, that they believed that Williams' actions were criminal, they argue that this is not a judicial admission of "fact" to which they are bound, but rather a legal contention.

---

[2]  Wal-Mart claims that, because the elements of the crimes of assault and battery are identical to those of the intentional torts of assault and battery, Plaintiffs' Complaint should be deemed to contain allegations of criminal behavior.

13

Plaintiffs have the better argument. It is no secret that Plaintiffs believed that criminal charges should be brought against Officer Williams. Accordingly, when asked if they believed that Williams' conduct was criminal in nature, they naturally said that they did. Under the circumstances presented here, however, that single statement does not completely change Plaintiffs' theory of liability. Plaintiffs have never alleged that Wal-Mart was negligent because it breached a duty to protect Crawford from the criminal acts of a third party. Instead, Plaintiffs allege that Wal-Mart was negligent because it breached a duty to use ordinary care to keep its premises in a reasonably safe condition and to protect its business invitees from foreseeable dangers. The Court therefore concludes that Plaintiffs need not prove that Wal-Mart had a duty to protect Crawford from the criminal acts of a third party.

### b.    Open-and-Obvious Danger Doctrine

In their Complaint, Plaintiffs allege that Wal-Mart was negligent in its failure to warn Crawford of the danger associated with carrying an unpackaged pellet rifle in the store. In its motion for summary judgment, Wal-Mart broadly argues that, because this was an "open and obvious danger," it had no duty to protect him from harm.

As previously noted, a property owner owes its business invitees a duty to warn them of latent dangers that are known to the owner. "A latent danger is a danger which is hidden, concealed and not discoverable by ordinary inspection,

14

that is, not appearing on the face of a thing and not discernible by examination."

*Gibbs v. Speedway, LLC*, 2014-Ohio-3055, ¶ 22, 15 N.E.3d 444, 451 (2d Dist.)

(internal quotations omitted). The duty to warn of latent dangers stems from the

fact that the property owner has superior knowledge of the risk. *Smrtka v. Boote*,

2017-Ohio-1187, at ¶814, 88 N.E.2d 465, 470 (9th Dist.).

When the danger at issue is not hidden, but is "open and obvious," the

property owner "may reasonably expect that persons entering the premises will

discover those dangers and take appropriate measures to protect themselves."

*Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St. 3d 642, 644, 597 N.E.2d

504, 506. Accordingly, "[w]hen applicable, . . . the open-and-obvious doctrine

obviates the duty to warn and acts as a complete bar to any negligence claims."

*Armstrong v. Best Buy Co., Inc.*, 2003-Ohio-2573, at ¶5, 99 Ohio St. 3d 79, 80,

788 N.E.2d 1088, 1090. Examples of "open and obvious dangers" on the owner's

premises include accumulations of ice and snow and tripping hazards. *Id.*

The applicability of the "open-and-obvious danger" doctrine to Plaintiffs'

claims in this case is questionable given that the hazard at issue is not a hidden

"defect" on Wal-Mart's premises, but rather a danger flowing from the allegedly

negligent manner in which Wal-Mart displayed the pellet guns and failed to secure

them. As the court explained in *Simmons v. American Pacific Enterprises, LLC*,

"[p]remises tort claims where the alleged negligence arises from static or passive

conditions, such as preexisting latent defects, are legally distinct from claims

15

averring active negligence by act or omission." 2005-Ohio-6957, ¶ 20, 164 Ohio App. 3d 763, 770, 843 N.E.2d 1271, 1276. Importantly, the "open-and-obvious doctrine applies only to static conditions." *Id.* at ¶23.

In the Court's view, Plaintiffs' claims do not allege negligence arising from a static or passive condition on the property. Rather, they fall squarely in the "active negligence by act or omission" category. Plaintiffs have alleged that Wal-Mart failed to exercise reasonable care in its display of the pellet rifles, in failing to return the unpackaged pellet rifle to its box, in failing to warn Crawford of the danger associated with carrying an unpackaged pellet rifle in the store, and in failing to adequately monitor Crawford's movements so that it could obtain the unpackaged pellet rifle from him before he was shot. As such, the Court rejects Wal-Mart's argument that the "open-and-obvious danger" doctrine precludes Plaintiffs' claims.

### c.    Duty to Protect from Foreseeable Dangers

As previously noted, a business owner also owes each business invitee a duty to inspect the premises to discover dangerous conditions and take reasonable precautions to protect him from foreseeable dangers. *Perry*, 53 Ohio St. 2d at 52, 372 N.E.2d at 336. "[T]he existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Wallace v. Ohio Dep't of Commerce*, 2002-Ohio-4210,

16

¶ 23, 96 Ohio St. 3d 266, 274, 773 N.E.2d 1018, 1026. *See also Menifee v.*

*Ohio Welding Prods., Inc.*, 15 Ohio St. 3d 75, 77, 472 N.E.2d 707, 710 (1984).

Wal-Mart's own retail expert, Michael Hodge, admitted that Wal-Mart had a

duty to conduct a risk assessment with respect to the pellet rifles and to take

action to protect customers from known dangers.  Doc. #236-1, PageID##16926-

27.  He further admitted that part of that assessment was to address risks

associated with the fact that the MK-177 pellet rifle looked like a real firearm.  *Id.*

at PageID#16932.  Hodge found that Wal-Mart did conduct such an assessment

and concluded that there was no risk to displaying an unsecured pellet rifle on the

shelf.  *Id.*

Plaintiffs' expert witness, Gary White, however, concluded that Wal-Mart

failed to exercise ordinary care in assessing the risks associated with the

unsecured display of pellet rifles that looked like real firearms, and in failing to take

reasonable precautions to protect customers from the foreseeable dangers

associated with such a display.  Doc. #224-1, PageID##15755-59.[3]

--------------------------------

[3]  Wal-Mart objects to the Court's consideration of White's report, arguing that it
is the subject of a motion in limine which challenges his qualifications, and it
contains inadmissible hearsay.  By separate order, the Court intends to overrule
Wal-Mart's Motion in Limine to Exclude Gary White's Testimony, Doc. #188.
Moreover, Fed. R. Civ. P. 56(c)(2) states that "[a] party may object that the
material cited to support or dispute a fact cannot be presented in a form that
would be admissible in evidence."  Although the expert witness report itself would
not be admissible at trial, White can present his same conclusions via live
testimony.  The Court therefore overrules Wal-Mart's objections.

Plaintiffs' law enforcement expert, Melvin Tucker, testified that it was reasonably foreseeable that the MK-177 could be mistaken for a real gun. Doc. #162, PageID#10424. Wal-Mart does not disagree with this statement. It argues, however, that, because Ohio is an open carry state, it was unforeseeable that a customer lawfully carrying a pellet rifle in the store would be shot and killed by a policeman. Wal-Mart further argues that it could not predict that another customer would call 911 and falsely report that Crawford was loading the rifle and pointing it at people, or that the 911 dispatcher would falsely tell the officers that Crawford had loaded the rifle with bullets, leading Officer Williams to believe that this could be an "active shooter" situation.

Nevertheless, the Ohio Supreme Court has held that:

> The foreseeability of the risk of harm is not affected by the magnitude, severity, *or exact probability of a particular harm*, but instead by the question of whether some risk of harm would be foreseeable to the reasonably prudent person. *See Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 339, 190 N.E. 924 (1934). Accordingly, the existence and scope of a person's legal duty is determined by the reasonably foreseeable, *general risk* of harm that is involved.

*Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 24, 142 Ohio St. 3d 257, 263, 29 N.E.3d 921, 929 (emphasis added).

Accordingly, it does not matter that Wal-Mart could not have anticipated that this particular factual scenario would unfold. The only question, with respect to the duty element of a negligence claim, is whether a reasonably prudent person would have anticipated that an injury was likely to result if a customer picked up

18

an unsecured pellet rifle that looked like a semiautomatic assault rifle and carried it through the store.

In *Menifee*, the court noted that the "foreseeability of harm usually depends on the defendant's knowledge." 15 Ohio St. 3d at 77, 472 N.E.2d at 710. Here, Wal-Mart had actual knowledge of several dangers associated with the MK-177 pellet rifles, including the exact danger that led to Crawford's death. Crosman, the manufacturer, included a warning on each box, stating that the pellet rifle is not a toy and may cause serious injury or death. The warning further states, "DO NOT BRANDISH OR DISPLAY THIS AIRGUN IN PUBLIC—IT MAY CONFUSE PEOPLE AND MAY BE A CRIME. POLICE AND OTHERS MAY THINK IT IS A FIREARM." Doc. #186-3, PageID#12346. Wal-Mart was fully aware of this warning. Doc. #258, PageID#18456; Doc. #260, PageID#18669.

Wal-Mart was also on notice of other dangers associated with the unsecured display of air rifles. Two months before Crawford was shot, Wal-Mart received an email message from a customer in Minnesota who was concerned about "a very big safety issue" concerning Wal-Mart's open, unsecured display of air rifles and ammunition. He noted that two young boys had loaded an air rifle and pointed it in his direction while he was shopping. He asked that the air rifles be secured in the same manner as real firearms. Doc. #214-5, PageID##13106-07.

In light of the foregoing, the Court finds that a reasonably prudent person would have anticipated that an injury was likely to result from Wal-Mart's

unsecured display of pellet rifles. Because the injury was foreseeable, the Court finds, as a matter of law, that Wal-Mart had a duty to take reasonable precautions to protect its business invitees from the dangers associated with the unsecured display of the MK-177 pellet rifles.

## 2. Breach

Plaintiffs must next prove that Wal-Mart breached its duty to inspect the premises to discover dangerous conditions and take reasonable precautions to protect Crawford from foreseeable dangers. Plaintiffs maintain that Wal-Mart's conduct fell below the standard of care in several respects. Each is discussed below.

### a. Display of Pellet Rifles

The first alleged breach of duty concerns the manner in which the MK-177 pellet rifles were displayed. Real firearms are heavily regulated by federal and state law. Timothy Hart, Wal-Mart's 30(b)(6) designee, testified that Wal-Mart has a policy that requires all *real* firearms to be locked in a display case. A customer is unable to handle a real firearm without the assistance and supervision of a Wal-Mart employee. All firearms have trigger locks on them. Doc. #260, PageID##18662, 18710. This is to protect the customers and the associates handling the firearm inside the store, and to prevent unsupervised customers from loading the firearms while inside the store. Doc. #264, PageID#19171. If a

customer chooses to purchase a firearm, a Wal-Mart employee must carry the firearm and escort the customer out of the store. Doc. #260, PageID##18662.

Plaintiffs note that, although the threats posed by an unloaded real firearm and an unloaded pellet rifle are identical, Wal-Mart has no similar policies or procedures governing the display or sale of pellet rifles. Pellet rifles, like the Crosman MK-177, are not subject to the same rules and regulations as real firearms. *Id.* at PageID##18670-71. Wal-Mart is not required by law to secure the pellet rifles in a locked display. *Id.* at PageID#18672. Hart admitted that Wal-Mart has no policies in place governing the sale or display of pellet rifles. Nor did it provide its employees with any training on the sale and display of pellet rifles. *Id.* at PageID##18672, 18698, 18702-03.

The Crosman MK-177 pellet rifles are displayed in flip-open boxes on shelving units in Wal-Mart's sporting goods department. Prior to 2012, the boxes came stapled shut. However, customers were ripping them open so that they could take the rifles out and handle them before deciding whether to buy them. Because of the damaged boxes, Wal-Mart returned many of the pellet rifles to Crosman. Accordingly, in 2012, Crosman asked for permission to send the MK-177 in a box that would allow the customer to simply flip open the lid and remove the pellet rifle. Wal-Mart agreed. Doc. #258, PageID##18450-51.

Accordingly, customers are able to easily remove the pellet rifles from the boxes. Wal-Mart does not require customers to ask a Wal-Mart employee for

assistance in handling the rifles. Nor is a Wal-Mart employee required to accompany a purchaser to the cashier at the front of the store. Doc. #260, PageID#18714.[4]

Timothy Hart admitted that, although not required, nothing prevented Wal-Mart from securing the pellet rifles in a locked display case. *Id.* at PageID#18664. Wal-Mart had discretion to determine how the pellet rifles should be displayed. *Id.* at PageID##18700. Crosman had no authority to dictate the manner in which the pellet rifles should be displayed. *Id.* at PageID#18733.

According to Matt Isabell, a Senior Buyer for Wal-Mart, Wal-Mart dictates the manner in which its merchandise is packaged and displayed; vendors typically comply with Wal-Mart's requests. Doc. #258, PageID##18445, 18448-49. Isabell admitted that Wal-Mart could have secured the pellet rifles in a locked display case but chose not to do so. The pellet rifles are not tethered. Nor are the boxes wrapped in spider wire, which would set off an alarm if the pellet rifle were removed from the box without the assistance of a Wal-Mart employee. *Id.* at PageID##18453, 18469.

---

[4]  Interestingly, Wal-Mart does have a policy governing a customer's *return* of a previously-purchased BB gun, air soft gun or paint ball gun. When such a gun is returned to the store, a manager must be notified, and the gun must be unloaded outside of the store. A Wal-Mart employee may then transport the pellet rifle inside the store. Doc. #260, PageID#18714; Doc. #214-11, PageID#13197.

Plaintiff's expert witness, Gary White, concluded that, given the dangers stemming from the fact that the MK-177 looked like a real gun, Wal-Mart failed to exercise ordinary care in implementing policies and procedures governing the display of the pellet rifles. Doc. #224-1, PageID#15756-57.

In the Court's view, based on the evidence presented, a reasonable jury could find that Wal-Mart breached its duty to take reasonable precautions to protect its customers from foreseeable dangers. Although Wal-Mart was not required by law to secure the MK-177 pellet rifles, a reasonable jury could find that it should have done so.

### b.    Failure to Return Pellet Rifle to Box

As previously noted, it is not entirely clear whether the MK-177 pellet rifle was in its box when Crawford picked it up or whether it was lying unpackaged on the shelf. The surveillance video shows that Crawford was talking on his cell phone when he picked up the pellet rifle and had only one hand free. It also shows that he spent very little time in that aisle of the store, barely slowing his pace as he walked past the pellet rifle display. Doc. #222-1, PageID##15148-49. Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could infer that the pellet rifle was *not* in its box when he picked it up.

> In a premises-liability action, the plaintiff can prove the defendant's breach of duty by establishing that (1) the defendant, through its officers or employees, was responsible for the hazard; (2) the defendant had actual knowledge of the hazard and neglected to promptly remove it or give adequate notice of its presence; or (3) the hazard existed for a sufficient length of time to reasonably justify the

23

inference that the failure to remove it or warn against it was
attributable to a lack of ordinary care.

*Simmons v. Quarry Golf Club, LLC*, 2016-Ohio-525, ¶ 26, 60 N.E.3d 454, 460

(5th Dist.). Notably, this is a disjunctive test. Plaintiffs can satisfy their burden by

proving any one of these three options.

There is no evidence to support a finding that a Wal-Mart employee removed

the pellet rifle from the box, thereby creating the hazard. Nor is there any

evidence to support a finding that Wal-Mart had actual knowledge of the hazard.

Nevertheless, viewing the evidence in the light most favorable to Plaintiffs, a

reasonable jury could find that the pellet rifle sat unpackaged on the shelf for a

sufficient length of time to reasonably justify the inference that the failure to return

it to its box was attributable to a lack of ordinary care.

Video footage from the pellet gun aisle shows an individual removing a pellet

rifle from its box at approximately 6:10 p.m., on August 5, 2014, and two other

individuals picking up the rifle before Crawford arrived at approximately 8:18 p.m.

Even earlier video footage shows other Wal-Mart customers picking up "the same

or a similar unpackaged rifle in the same aisle" two days earlier. Doc. #222-6,

PageID##15408-09.

Wal-Mart correctly points out that this evidence concerning how long the

pellet rifle was out of its package, if at all, is inconclusive. Even assuming that

video footage shows other customers handling the same or a similar unpackaged

pellet rifle on August 3, 2014, it is impossible to tell whether the rifle was ever

24

returned to its box before Crawford picked it up. Doc. #222-1, PageID#15181.

Wal-Mart maintains that summary judgment is warranted because Plaintiffs' negligence claim is based on pure speculation. In the Court's view, however, the question of how long the pellet rifle was unpackaged, if at all, must be resolved by a jury after viewing the relevant surveillance videos.

Wal-Mart has a merchandise zoning policy requiring its employees to frequently conduct safety sweeps and return any unpackaged merchandise to its package. Doc. #214-15, PageID#13206; Doc. #227-1, PageID#15924. If a jury were to find that the MK-177 that Crawford picked up had been out of its box for two days, this could be sufficient to establish a breach of duty.

### c.     Failure to Locate, Warn Crawford in a Timely Manner

Plaintiffs also allege that Wal-Mart was negligent in failing to monitor its premises and in failing to locate Crawford in a timely manner to warn him of the dangers associated with carrying the unpackaged MK-177 pellet rifle through the store. As previously noted, two managers were looking for Crawford at the time he was shot, but they did not treat this as an urgent situation.

Plaintiffs' expert, Gary White, concluded that:

Wal-Mart failed to exercise ordinary care in the training of its managers and staff to address the known dangers associated with the selling or air guns that looked like real fire arms. Specifically, Walmart failed to train its supervisors . . . and associates . . . on how to avoid and respond to emergencies resulting from confusion among the public (Ronald and April Ritchie) and law enforcement (Officer Sean Williams and David Darkow) that could result from the display of the MK-177 inside a Walmart store.

Doc. #224-1, PageID#15757.

White further opined that, on the night in question, Wal-Mart failed to exercise ordinary care in adequately staffing its Asset Protection Department, and in failing to timely and properly locate Crawford to warn him of the danger of handling the pellet rifle outside of its box and in failing to obtain it from him. *Id.* at PageID#15758.

Wal-Mart argues that, because there was an adequate and conspicuous warning on the box, Wal-Mart cannot be held liable on a premises liability claim for failure to warn. Nevertheless, if Wal-Mart is to blame for not returning the pellet rifle to the box that contained that warning, Wal-Mart is not necessarily absolved of liability for failure to warn.

In the Court's view, a reasonable jury could find that Wal-Mart breached its duty to take reasonable precautions to protect Crawford once it knew that he was carrying an unpackaged MK-177 pellet rifle through the store.

### 3.   Resulting Injury

Finally, in order to succeed on their claims of negligence and premises liability, Plaintiffs must prove that Wal-Mart's alleged negligence proximately resulted in Crawford's injuries and death. Wal-Mart argues that Plaintiffs cannot establish that Wal-Mart's conduct was the proximate cause of Crawford's death. In the alternative, Wal-Mart argues that the actions of 911 caller Ronald Ritchie, the 911 dispatcher and the police officers were intervening, superseding causes,

26

absolving Wal-Mart of any liability. The Court finds that genuine issues of material fact preclude summary judgment on each of these issues.

There can be more than one proximate cause of any injury and "when two factors combine to produce damage or illness, each is a proximate cause." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St. 3d 585, 588, 575 N.E.2d 828, 830 (1991) (quotation omitted). As a general rule, "where an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act, proximate cause is established, and the fact that some other act unites with the original act to cause injury does not relieve the initial offender from liability." *Strother v. Hutchinson*, 67 Ohio St. 2d 282, 287, 423 N.E.2d 467, 471 (1981). However, "it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged negligent act." *Id.* Ordinarily, the existence of proximate cause is a question of fact for the jury to consider. *Id.* at 288, 423 N.E.2d at 471.

Wal-Mart argues that its conduct in allegedly creating the circumstances that enabled Crawford to carry the unpackaged pellet rifle through the store cannot be considered a proximate cause of his death because Ohio is an open carry state and Williams' use of deadly force against Crawford was not foreseeable.

Wal-Mart notes that Crawford was legally permitted to openly carry a loaded firearm in the store and Officer Williams admitted that he would not have been justified in shooting Crawford for simply holding what appeared to be a loaded AR-

27

15 assault rifle. According to Wal-Mart, merely carrying a pellet rifle does not naturally result in someone being shot.

Wal-Mart also maintains that it was not reasonably foreseeable that Ronald Ritchie would falsely tell the 911 dispatcher that Crawford was loading the rifle and pointing it at people in the store, that the 911 dispatcher would falsely tell the responding officers that the suspect had loaded the rifle "with bullets," or that Williams would shoot Crawford because he believed that Crawford posed an immediate threat of serious bodily harm. In other words, according to Wal-Mart, it was not reasonably foreseeable that the manner in which it displayed its pellet rifles would lead to Crawford's death. Wal-Mart also argues that Plaintiffs cannot establish that Crawford's death would have been prevented if the air rifle were in its box, if the box were wrapped in spider wire, or if the Wal-Mart managers had located Crawford in a timely manner.

Plaintiffs argue, however, that Wal-Mart's negligence created the hazard that initiated the events that led to Crawford's death. Despite knowing the risk that the MK-177 pellet rifle could easily be confused with an AR-15 semiautomatic rifle, Wal-Mart displayed the MK-177 in a manner that allowed a customer to easily flip open the box, remove the pellet rifle and carry it around the store. If the customer then makes any movements that could be interpreted as threatening, it could set in motion a chain of events leading to the use of deadly force against him.

28

The Court agrees that a reasonable jury could find that Crawford's death was the culmination of a natural and continuous sequence of events which produced a result which would not have occurred without Wal-Mart's alleged negligence in failing to secure the MK-177. But for Crawford's ability to pick up the unpackaged MK-177 and carry it through the store, Ritchie would not have called 911 and Williams would not have shot Crawford. Officer Williams testified that it appeared that Crawford was holding a real firearm and that it appeared to be loaded. Doc. #121, PageID#2439. He further testified that, if the MK-177 were still in its box, or if Crawford had been accompanied by a Wal-Mart associate, he would not have shot Crawford. *Id.* at PageID#2490.

The Court also agrees that a reasonable jury could find that Crawford's death was foreseeable because a "reasonably prudent person would have anticipated that an injury was likely to result" from Wal-Mart's alleged negligence. *Menifee*, 15 Ohio St. 3d at 77. Such an injury was clearly foreseen by the manufacturer. Crosman specifically warned that, because other people, including the police, might mistake the pellet rifle for a real gun, it should not be brandished or displayed in public.

Plaintiffs maintain that, likewise, Wal-Mart should have reasonably foreseen that an unpackaged MK-177 would be confused for an AR-15 semiautomatic assault rifle, and that this confusion could result in injury to anyone who picked it up and carried it through the store. Regardless of whether Ohio is an open carry

29

state, other shoppers might become alarmed and call 911. As in this case, responding law enforcement officers could also mistake the pellet rifle for a real firearm, leading them to believe that there was an immediate threat of serious physical harm, justifying the use of deadly force.

In the Court's view, based on the evidence presented, a reasonable jury could find that Wal-Mart's alleged negligent conduct was a proximate cause of Crawford's death and that Wal-Mart's conduct combined with the conduct of others to create a single, indivisible injury. A reasonable jury could also find that Crawford's death was a foreseeable, natural consequence of Wal-Mart's alleged negligence with respect to the manner in which it displayed the pellet rifles, its alleged failure to return the unpackaged pellet rifle to its box, or its alleged failure to locate and warn Crawford in a timely manner.

The next question is whether Williams' use of deadly force, based on the false 911 call and the inaccurate dispatch, was an intervening, superseding cause such that Wal-Mart is absolved of any liability. Again, this is typically a question of fact for the jury. *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St. 3d 266, 269, 617 N.E.2d 1068, 1071 (1993). The Ohio Supreme Court has held that:

> where the original negligence of the defendant is followed by the
> independent act of a third person which directly results in injurious
> consequences to plaintiff, defendant's earlier negligence may be found
> to be a proximate cause of those injurious consequences, if, according
> to human experience and in the natural and ordinary course of events,
> defendant could reasonably have foreseen that the intervening act
> was likely to happen.

> Or, stating the proposition a little differently, the connection between the defendant's negligence as a proximate cause of an injury is not broken, if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable, and the defendant's negligence remains an important link in the chain of causation.

*Taylor v. Webster*, 12 Ohio St. 2d 53, 56-57, 231 N.E.2d 870, 872-73 (1967).

The test is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Leibreich*, 67 Ohio St. 3d at 269, 617 N.E.2d at 1071 (internal quotation omitted). "The term 'independent' means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence. The term 'new' means that the second act of negligence could not reasonably have been foreseen." *R.H. Macy & Co., Inc. v. Otis Elevator Co.*, 51 Ohio St. 3d 108, 554 N.E.2d 1313, 1317 (1990) (quoting 1 Ohio Jury Instructions (1983), § 11.30).[5] With respect to foreseeability of the intervening cause, "[i]t is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Mudrich v. Standard Oil Co.*, 153 Ohio St. 31, 39, 90 N.E.2d 859, 863 (1950).

---

[5] This is still the applicable test for an intervening and superseding cause. *See* Ohio Jury Instructions-CV 405.05 (2017).

31

Wal-Mart again argues that it was not reasonably foreseeable that another shopper, spotting Crawford with the MK-177, would call 911 and falsely report that Crawford was loading the rifle and pointing it at people, or that the 911 dispatcher would falsely tell the responding officers that Crawford had loaded the rifle with bullets. Wal-Mart further argues that it was not reasonably foreseeable that Officer Williams would enter the store believing that this was an "active shooter" situation and fire at Crawford less than two seconds after Darkow commanded Crawford to drop the gun. According to Wal-Mart, these events are superseding and intervening causes of Crawford's death, breaking the connection to any alleged negligence by Wal-Mart, and absolving Wal-Mart of liability.

Given the manufacturer's conspicuous warning on the box, the Court believes that a reasonable jury could find that these subsequent actions of third parties were, in fact, foreseeable. Viewing the evidence in the light most favorable to the Plaintiffs, the Court concludes that a reasonable jury could find that Wal-Mart's alleged negligence, which allowed Crawford to pick up the unpackaged MK-177 and carry it through the store was "an important link in the chain of causation," *Taylor*, 12 Ohio St. 2d at 56-57, 231 N.E.2d at 872-73, and that Ritchie's subsequent 911 call and Williams' subsequent use of deadly force was reasonably foreseeable. Accordingly, genuine issues of material fact preclude summary judgment on the question of proximate cause.

32

To summarize, the Court finds that Plaintiffs have presented sufficient evidence from which a reasonable jury could find that Wal-Mart owed Crawford a duty to inspect the premises and take reasonable precautions to protect its business invitees from foreseeable dangers, that Wal-Mart breached that duty, and that Wal-Mart's breach was the proximate cause of Crawford's death. Accordingly, the Court OVERRULES Wal-Mart's motion for summary judgment on Plaintiffs' claims of negligence and premises liability.

### C.    Wrongful Death (Count 14)

Plaintiffs, in Count 14 of the Complaint, assert a wrongful death claim under Ohio Revised Code § 2125.01 *et seq.* They seek damages for their loss of Crawford's services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, for their own grief, for Crawford's funeral and burial expenses and for other harm they have suffered. Doc. #1, PageID#23. "A wrongful-death action in Ohio has three elements: (1) the existence of a duty owed to the plaintiff's decedent; (2) a breach of that duty; and (3) proximate causation linking the breach of the duty to the decedent's death." *CBC Eng'rs & Assocs. Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 888 (S.D. Ohio 2012).

Wal-Mart argues that, even if Plaintiffs could prove that it had a duty to protect Crawford from a foreseeable risk that he would be shot by Officer Williams, Plaintiffs must prove that Wal-Mart was "grossly negligent" in its breach

of that duty in order to recover under Ohio's wrongful death statute. The Court

agrees. The wrongful death statute provides, in relevant part:

> No action for the wrongful death of a person may be maintained
> against the owner or lessee of the real property upon which the death
> occurred if the cause of the death was the violent unprovoked act of a
> party other than the owner, lessee, or a person under the control of
> the owner or lessee, unless the acts or omissions of the owner,
> lessee, or person under the control of the owner or lessee constitute
> gross negligence.

Ohio Rev. Code § 2125.01.[6]

In *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App. 3d 213,

658 N.E.2d 1140 (2d Dist. 1995), the court interpreted this statute:

> to bar a wrongful death action brought against the owner or operator
> of a premises for a death caused by the violent act of a third person
> while on the premises unless (1) the *cause* proximately resulted from
> the gross negligence of the owner or operator, or (2) the cause was
> *provoked* by the owner or operator's act or omission.

*Id.* at 228, 658 N.E.2d at 1150. As Wal-Mart notes, "gross negligence" is defined

as the "failure to exercise any or very slight care." *Johnson v. State*, 66 Ohio St.

59, 67, 63 N.E. 607, 609 (1902).

Wal-Mart notes that Plaintiffs have not alleged gross negligence. In any

event, Wal-Mart maintains that Plaintiffs cannot satisfy the "gross negligence"

standard set forth in the first prong of the test. Wal-Mart displayed the pellet rifle

---

[6] The Court rejects Wal-Mart's suggestion that this "gross negligent" standard
also applies to Plaintiffs' claims of negligence and premises liability. By its terms,
this standard applies only to claims of wrongful death.

as the manufacturer intended and violated no laws or industry standards in not securing the pellet rifle. Moreover, there was a warning on the box notifying customers of the risks of brandishing or displaying the rifle in public. In addition, Wal-Mart had policies requiring safety sweeps and trained its employees on those policies. Moreover, when Corey Brooks, a Wal-Mart employee, saw Crawford carrying the pellet rifle through the store, he immediately notified Michaela Menz and two of Wal-Mart's managers began looking for Crawford. Based on this evidence, the Court agrees that Plaintiffs have failed to present sufficient evidence from which a reasonable jury could find that Wal-Mart failed to "exercise any or very slight care." Wal-Mart may have been negligent, but it was not grossly negligent.

In the alternative, Plaintiffs may succeed by showing that Williams' shooting death of Crawford was somehow "provoked" by Wal-Mart's act or omission. As noted in *Monnin*, to "provoke" is "[t]o excite; to stimulate; to arouse; to irritate, or enrage." 103 Ohio App. 3d at 228, 658 N.E.2d at 1150 (quoting Black's Law Dictionary (5 Ed. 1990) 1225). The provocation may be either intentional or inadvertent. "Whether provocation has occurred looks to the act which is alleged to be provocation and to the result it creates." *Id.* at 228-29, 658 N.E.2d at 1150.

Plaintiffs argue that Wal-Mart "unilaterally created all conditions ripe for this dangerous situation to occur," and therefore "provoked" Crawford's death. Doc.

35

#214, PageID#13089. The Court rejects this argument. Although Wal-Mart's alleged acts or omissions may very well be a *proximate cause* of Crawford's death, they did not "provoke" Williams' decision to use deadly force such that Wal-Mart can be held liable on the wrongful death claim. Nor did those acts or omissions "provoke" Crawford to carry the unpackaged pellet rifle through the store, as that term is defined above.

The *Monnin* case is illustrative. There, a bank robber shot and killed two bank employees and wounded a third. Prior to the shooting, one of the bank employees told the robber that she knew his mother. At issue was whether this statement "provoked" the shooting such that the bank could be held liable on the wrongful death claims. *Monnin*, 103 Ohio App. 3d at 229, 658 N.E.2d at 1150.

In contrast, no Wal-Mart employee had any interaction with Officer Williams that could be deemed to have "provoked" him to pull the trigger. In fact, the Wal-Mart managers did not even know that Ronald Ritchie had called 911 or that the officers had entered the store. Likewise, Williams did not know whether Crawford had carried the rifle into the store or had picked it up inside Wal-Mart. Doc. #121, PageID##2495-96. Nor did he know that it was a pellet rifle. He testified that he shot at Crawford because he believed that Crawford was aggressively turning toward him with what appeared to be a loaded assault rifle. Wal-Mart's alleged negligence in failing to properly secure the pellet rifle and failing to return it to its package played no part in Williams' assessment of the need for deadly force. *Id.*

36

at PageID#2496. Although Wal-Mart's alleged negligence may have created the situation that led to Crawford's death, Wal-Mart's alleged "provocation" is simply too attenuated to support a wrongful death claim under Ohio law.

Accordingly, the Court SUSTAINS Wal-Mart's motion for summary judgment on Count 14, the wrongful death claim.

### D.    Survivorship (Count 13) and Loss of Consortium (Counts 15-17)[7]

In Count 13 of the Complaint, Plaintiffs asserts a claim of survivorship under Ohio Revised Code § 2305.21 for the conscious pain and suffering, anxiety and fright that Crawford experienced as a result of this incident prior to the time he died. Under Ohio law, this claim exists separate and apart from the wrongful death claim. *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 826 (S.D. Ohio 2002). It is derivative of Plaintiffs' principal claims and remains in the case "so long as any of the underlying principal claims in the complaint remain." *Stratford v. SmithKline Beecham Corp.*, No. 2:07–cv–639, 2008 WL 2491965, at *9 (S.D. Ohio June 17, 2008). Because the claims of negligence and premises liability survive the motion for summary judgment, the survivorship claim does as well.

Counts 15, 16 and 17 assert claims for loss of consortium by Crawford's father and Crawford's two minor sons. A loss-of-consortium claim is likewise a

---

[7]    Although Wal-Mart has not specifically moved for summary judgment on the claims of survivorship or loss of consortium, the Court includes this brief discussion for the sake of completeness.

derivative claim, "dependent on the existence of a primary cause of action."

*Messmore v. Monarch Mach. Tool Co.* (1983), 11 Ohio App. 3d 67, 68-69. 463 N.E.2d 108, 110. Again, because the claims of negligence and premises liability remain for trial, the loss of consortium claims do as well.

## IV. Conclusion

For the reasons stated above, the Court SUSTAINS IN PART and OVERRULES IN PART Wal-Mart's Motion for Summary Judgment, Doc. #186. The Court dismisses with prejudice the wrongful death claim, Count 14, against Wal-Mart. Trial against Wal-Mart will proceed on the claims of negligence, premises liability, survivorship, and loss of consortium.

Date: January 28, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE