IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRESSA SHERROD, *et al.*,      :

     Plaintiffs,

    v.      :      Case No. 3:14-cv-454

OFFICER SEAN C. WILLIAMS, *et al.*,      :      JUDGE WALTER H. RICE

     Defendants.      :

---

**DECISION AND ENTRY SUSTAINING:** BEAVERCREEK DEFENDANTS' MOTION IN LIMINE REGARDING DEFENDANT WILLIAMS' USE OF FORCE HISTORY AND RESPONSE TO RESISTANCE/USE OF FORCE DATA (DOC. #190); BEAVERCREEK DEFENDANTS' MOTION IN LIMINE REGARDING DEFENDANT WILLIAMS' PRIOR USE OF DEADLY FORCE (DOC. #192); BEAVERCREEK DEFENDANTS' MOTION IN LIMINE REGARDING DEFENDANT WILLIAMS' TATTOO (DOC. #204); PLAINTIFFS' MOTION IN LIMINE TO PREVENT REFERENCES TO JOHN CRAWFORD'S ALLEGED MARIJUANA USE (DOC. #201); AND WAL-MART'S MOTION IN LIMINE #5 (DOC. #207)

**DECISION AND ENTRY OVERRULING:** WAL-MART'S MOTION IN LIMINE #2 (DOC. #209); WAL-MART'S MOTION IN LIMINE #6 (DOC. #238); AND WAL-MART'S MOTION IN LIMINE #7 (DOC. #239)

**DECISION AND ENTRY OVERRULING AS MOOT:** BEAVERCREEK DEFENDANTS' MOTION IN LIMINE REGARDING REFERENCES TO OTHER PUBLICIZED INCIDENTS (DOC. #193); BEAVERCREEK DEFENDANTS' MOTION IN LIMINE REGARDING DISPUTE BETWEEN DAYTON RTA AND THE CITY OF BEAVERCREEK ABOUT BUS STOPS AT FAIRFIELD COMMONS MALL (DOC. #203); AND WAL-MART'S MOTION IN LIMINE #4 (DOC. #210)

**DECISION AND ENTRY OVERRULING WITHOUT PREJUDICE:**
BEAVERCREEK DEFENDANTS' MOTION IN LIMINE REGARDING
REFERENCES TO THE TERMS "TOY GUN," "AIR GUN," "AIR
RIFLE," "PELLET RIFLE," AND "BB GUN" (DOC. #191); AND WAL-
MART'S MOTION IN LIMINE #3 (DOC. #208)

This matter is currently before the Court on several motions in limine.

Defendants Officer Sean C. Williams, Sergeant David M. Darkow, Chief Dennis

Evers and the City of Beavercreek, Ohio ("the Beavercreek Defendants") have filed

the following: (1) Motion in Limine Regarding Defendant Williams' Use of Force

History and Response to Resistance/Use of Force Data (Doc. #190); (2) Motion in

Limine Regarding References to the Terms "Toy Gun," "Air Gun," "Air Rifle,"

"Pellet Gun," "Pellet Rifle," and "BB Gun" (Doc. #191); (3) Motion in Limine

Regarding Defendant Williams' Prior Use of Deadly Force (Doc. #192); (4) Motion

in Limine Regarding References to Other Publicized Incidents (Doc. #193); (5)

Motion in Limine Regarding Dispute Between Dayton RTA and the City of

Beavercreek About Bus Stops at Fairfield Commons Mall (Doc. #203); and (6)

Motion in Limine Regarding Defendant Williams' Tattoo (Doc. #204).

Plaintiffs have filed a Motion in Limine to Prevent References to John

Crawford's Alleged Marijuana Use (Doc. #201).[1]

---

[1]  This Decision and Entry does not address Plaintiffs' Motion in Limine to Preclude
Argument that Ronald Ritchie was a Legal or Proximate Cause of John Crawford's
Death, Doc. #211. A separate Decision and Entry addressing that motion is
forthcoming.

Defendants Wal-Mart Stores East, LP, and Wal-Mart Stores, Inc. (collectively "Wal-Mart"), have filed the following: (1) Motion in Limine #2 (Doc. #209); (2) Motion in Limine #3 (Doc. #208); (3) Motion in Limine #4 (Doc. #210); (4) Motion in Limine #5 (Doc. #207); (5) Motion in Limine #6 (Doc. #238); and (6) Motion in Limine #7 (Doc. #239).

## I.    Background and Procedural History

The Court presumes the parties' familiarity with the relevant facts.  To summarize, on August 5, 2014, Ronald Ritchie, a shopper at the Beavercreek Wal-Mart store, called 911 to report that a black man was loading a black rifle, waving it around and pointing it at people inside the store.  Beavercreek Police Officer Sean C. Williams and Sergeant David M. Darkow responded to the 911 dispatch. They found the suspect, John Crawford, III, standing alone in the pet department, looking at the shelves.  In his right hand, he was holding a black rifle, which was pointed at the ground.

Sergeant Darkow ordered Crawford to drop the weapon.  According to Officer Williams, Crawford turned toward the officers in an aggressive manner with his rifle in a low-ready position.  Officer Williams fired two shots at Crawford, who died a short time later.  It was later discovered that the "rifle" was actually an unloaded pellet rifle, or BB gun, that Crawford had picked up in Wal-Mart's sporting goods department.

The Administratrix of Crawford's estate and several of his family members filed suit against Williams, Darkow, Beavercreek's Chief of Police, Dennis Evers, the City of Beavercreek and Wal-Mart, alleging numerous federal and state claims. On January 15, 2019, the Court issued a Decision and Entry on motions for summary judgment filed by Plaintiffs and the Beavercreek Defendants. Doc. #240. On January 28, 2019, the Court issued a Decision and Entry on Wal-Mart's Motion for Summary Judgment. Doc. #273.

After the Beavercreek Defendants filed a notice of interlocutory appeal, Doc. #272, the Court vacated the February 4, 2019, trial date. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The interlocutory appeal is limited to questions of whether Officer Williams is entitled to qualified immunity on the § 1983 claims and whether Officer Williams and Chief Evers are entitled to statutory immunity on the state law claims. Therefore, the Court retains jurisdiction to consider and decide motions unrelated to the subject of the appeal. To the extent possible, the Court will rule on the pending evidentiary motions so that trial may proceed as quickly as possible once the interlocutory appeal has been decided.

## II.    Motions in Limine (Docs. ##190-193, 201, 203-204, 207-211, 238-239)

The parties have filed multiple motions in limine, seeking to exclude certain evidence at trial.

### A.    Relevant Law

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2

F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

B. The Beavercreek Defendants' Motions in Limine (Docs. ##190-193, 203-204)

1. Williams' Use-of-Force History and Response-to-Resistance/Use-of-Force Data (Doc. #190) and Williams' Prior Use of Deadly Force (Doc. #192)

The Beavercreek Defendants have moved the Court for an order excluding evidence of Officer Williams' prior uses of force and statistics showing that he used force at a much higher rate than any other officer on the Beavercreek police force. Doc. #190. They also ask the Court to exclude testimony, evidence and argument concerning Officer Williams' use of deadly force against Scott Brogli in June of 2010. Williams and another officer had responded to a domestic violence call and observed blood outside the residence. When they entered the residence, Brogli charged at them with a large knife. Williams shot and killed him. Doc. #192.

In this Court's view, this evidence is clearly relevant and admissible with respect to the remaining claims against the City of Beavercreek and Chief Dennis Evers, which will be bifurcated from the claims against Officer Williams and tried only if the same jury first finds that Officer Williams violated Crawford's constitutional rights. Accordingly, the Court limits its discussion to the question

of whether such evidence is admissible for any purpose in the trial of the individual-capacity claims against Officer Williams.

The Beavercreek Defendants argue that this evidence is irrelevant to the question of whether it was objectively reasonable for Williams to use deadly force against Crawford during the incident in question. They also argue that any probative value is outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403. In addition, they argue that such "character evidence" is inadmissible under Fed. R. Evid. 404(b)(1), which prohibits the use of evidence of other wrongdoing "to prove a person's character in order to show that, on a particular occasion, the person acted in accordance with [that] character."

In contrast, Plaintiffs maintain that evidence of Williams' prior uses of force, including his use-of-force statistics and his prior use of deadly force, is relevant to the claims brought against him in his individual capacity. They further argue that such evidence is admissible under Fed. R. Evid. 404(b)(2), which provides that evidence of other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In addition, Plaintiffs contend that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice or confusion of the issues.

The threshold question is whether the evidence that Plaintiffs seek to admit is relevant. Evidence is relevant if: "(a) it has a tendency to make a fact more or

less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

With respect to the § 1983 claims against Officer Williams, the Beavercreek Defendants correctly note that the jury must determine whether his actions were objectively reasonable in light of the circumstances confronting him at that very moment. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Actions that the officer may have taken at other times in other situations are simply irrelevant to this determination. Accordingly, evidence of Williams' prior uses of force is irrelevant and therefore inadmissible with respect to the § 1983 claims.

With respect to at least some of the remaining state law claims, evidence of prior uses of force may be relevant but it is not necessarily admissible. Under Fed. R. Evid. 404(b)(1), such evidence is not admissible to show that Williams acted in conformity with his prior uses of force. The Sixth Circuit has held that, before admitting evidence under Fed. R. Evid. 404(b)(2), it must:

> (1) determine whether this is sufficient evidence that the prior acts occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in the rule; and (3) apply Rule 403 balancing to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011).

There appears to be little dispute that the prior acts occurred. Officer Williams' prior uses-of-force are documented in his personnel file and included in the statistical analyses. Plaintiffs argue that this evidence is admissible under Fed.

R. Evid. 404(b) to show the absence of mistake or accident, to show habit, and to show intent. Doc. #243.

Officer Williams does not contend that he shot Crawford by accident or by mistake. Rather, he claims that he intentionally shot him because he believed that Crawford posed an imminent danger of serious bodily harm. Accordingly, this exception does not apply.

Plaintiffs also argue that evidence of Williams' prior acts is admissible to show intent. They cite to several cases in courts have admitted evidence of police officers' prior uses of excessive force to prove that they intended to inflict injury on others during the course of an arrest. *See, e.g., Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1074-75 (N.D. Ill. 1999) (admitting evidence of prior use of excessive force to show the officer's "intention to commit assault and battery on Edwards."); *United States v. Brown*, 250 F.3d 580, 585-86 (finding no abuse of discretion where district court admitted evidence of prior incident to show officer's intent "to punish people who defied his authority.").

Assuming *arguendo* that evidence of Williams' prior uses of force would be admissible under Rule 404(b)(2) to show that he intended to inflict physical or emotional injury on Crawford, it does not survive the Rule 403 balancing test. Absent proof of factually-similar circumstances, it cannot be said that evidence of Williams' prior uses of force is especially probative of his intent to inflict physical or emotional injury on Crawford. Notably, although statistics show that Williams uses force more often than other officers, his supervisors have never deemed any

9

of his prior uses of force to be excessive. Moreover, only one of the prior incidents involved the use of deadly force and, there, it is undisputed that Williams' use of deadly force was warranted.

In the Court's view, the probative value of such evidence with respect to the state law claims brought against Williams is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Evidence that Officer Williams uses force more frequently than other officers on the police force and evidence that he has used deadly force once before would distract the jury from the relevant issues stemming from this particular incident. Moreover, if the Court were to allow Plaintiffs to introduce evidence of Williams' prior uses of force, a jury could improperly conclude that, because Williams has a propensity to use force, he must have acted in conformity with that propensity when he shot and killed Crawford. Accordingly, such evidence is excludable under Rule 403.

Plaintiffs also argue that the statistical data demonstrates that Williams had a "habit" of using force. They also argue that evidence of prior incidents shows that Williams had a "habit of acting with immaturity" and "popping off at the mouth." Doc. #243, PageID#17323. "Habit" is not one of the exceptions listed in Rule 404(b)(2). Nevertheless, Fed. R. Evid. 406 provides that "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit." A "habit," however, is "one's regular response to a repeated specific situation." Examples might include "going down a particular stairway two stairs at a time" or "giving the hand-signal for a

left-turn" or "alighting from railway cars while they are moving." Fed. R. Evid. 406 advisory committee notes to 1972 Proposed Rules.

In the Court's view, Rule 406 does not apply here. A police officer may have a "habit" of escorting a handcuffed suspect by the left elbow or of reading a suspect his *Miranda* rights at a certain point in the process of an arrest. However, the fact that an officer may have a tendency to use force more frequently than other officers does not constitute a "habit." Because each situation encountered by a police officer presents a unique set of circumstances, the officer's use of force cannot be deemed a "regular response to a repeated specific situation."

For the reasons set forth above, the Court SUSTAINS the Beavercreek Defendants' Motion in Limine Regarding Defendant Williams' Use-of-Force History and Response-to-Resistance/Use-of-Force Data, Doc. #190, and their Motion in Limine Regarding Defendant Williams' Prior Use of Deadly Force, Doc. #192.[2] This opinion is limited to the individual liability claims against Williams.

---

[2] In their memorandum in opposition to these motions, Doc. #243, Plaintiffs suggest that certain evidence contained in Williams' personnel file is admissible under Fed. R. Evid. 608(b) for impeachment purposes because it is probative of Williams' character for truthfulness. More specifically, Plaintiffs argue that Williams lied when he testified that he saw Crawford turn toward him with the rifle. Plaintiffs seek to introduce evidence of two citizen complaints, one allegedly showing that Williams has a tendency to twist the facts to support his position, and one in which Williams was directly accused of lying. The Court reserves ruling on the admissibility of this evidence for impeachment purposes and directs Plaintiffs' counsel to avoid mention of this evidence in their opening statements to the jury and to ask to approach the bench before attempting to introduce such evidence.

11

### 2. References to the Terms "Toy Gun," "Air Gun," "Air Rifle," "Pellet Gun," "Pellet Rifle," and "BB Gun" (Doc. #191)

The Beavercreek Defendants ask the Court to exclude all testimony, evidence and argument that the firearm held by Crawford was a pellet rifle, and to prohibit Plaintiffs from referring to it as a "toy gun," "air gun," "air rifle," "pellet gun," "pellet rifle," or "BB gun." Doc. #191. Defendants maintain that this evidence is irrelevant to the determination of whether Williams used excessive force because, in analyzing whether Williams' use of force was objectively reasonable, a jury may consider only those facts known to him or perceived by him at the time. At the time of the shooting, Officer Williams believed that Crawford was holding a real AR-15 assault rifle. It was later discovered that it was only a pellet rifle designed to look like an AR-15. Defendants further argue that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues.

Plaintiffs argue, however, that the jury must be allowed to hear that Crawford was holding a pellet rifle instead of a real assault rifle. They maintain that, if the jury is not told that the rifle was not a real firearm, it would prejudice Plaintiffs because the jury would mistakenly believe that Crawford was engaging in criminal activity. Plaintiffs also argue that a reasonable jury could find that Williams should have known that Crawford was not holding a real assault rifle. Plaintiffs suggest that any prejudice or confusion of the issues can be cured by a jury instruction stating that, in determining whether Williams used excessive force,

12

the jury must assume that he did not know that Crawford was holding a pellet rifle rather than a real assault rifle.

The Beavercreek Defendants acknowledge that evidence that Crawford was carrying a pellet rifle and not a real gun is relevant to claims asserted against the Wal-Mart Defendants. This forms the major basis for the Beavercreek Defendants' motion to sever the claims against them from the claims asserted against the Wal-Mart Defendants, Doc. #117. The Court has overruled that motion without prejudice to refiling after the Sixth Circuit has resolved the interlocutory appeal. Because the issues involved in this motion in limine are so intertwined with the motion to sever, the Court likewise OVERRULES the Beavercreek Defendants' Motion in Limine Regarding References to the Terms "Toy Gun," "Air Gun," "Air Rifle," "Pellet Gun," "Pellet Rifle," and "BB Gun," Doc. #191, WITHOUT PREJUDICE to refiling, if relevant, after the interlocutory appeal has been decided.

### 3. References to Other Publicized Incidents (Doc. #193)

The Beavercreek Defendants also ask the Court to exclude testimony, evidence and argument regarding any other publicized incidents involving the use of deadly force against unarmed individuals by law enforcement personnel. Doc. #193. They maintain that such evidence is irrelevant to the claims asserted here and that its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. According to the Beavercreek Defendants, introduction of such evidence will serve only to inflame the jury.

Plaintiffs have indicated that they do not intend to introduce any such evidence.[3] Accordingly, the Court OVERRULES AS MOOT the Beavercreek Defendants' Motion in Limine to Exclude References to Other Publicized Incidents, Doc. #193.

### 4. References to Dispute Between Dayton RTA and the City of Beavercreek About Bus Stops at Fairfield Commons Mall (Doc. #203)

The Beavercreek Defendants ask the Court to exclude testimony, evidence and argument concerning a previous dispute between the Dayton Regional Transportation Authority ("RTA") and the City of Beavercreek related to bus stops near the Fairfield Commons Mall, across the street from Wal-Mart. Doc. #203. Chief Evers testified at his deposition that the police department took no position on whether there was correlation between an increase in crime rates due to the presence of bus stops. Doc. #136, pp. 16-18. The Beavercreek Defendants argue that the implication of this line of questioning is that there is an inherent racial bias among the City and its leaders and that this racial bias could have played some role in the shooting death of John Crawford.

The Beavercreek Defendants maintain that any evidence of the previous dispute concerning the bus stop is irrelevant and that any probative value is

---

[3] Plaintiffs have indicated, however, that they do plan to explore this issue during *voir dire* to elicit potential biases about police shootings. The Beavercreek Defendants have not objected to this.

substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. *See* Fed. R. Evid. 403.

Plaintiffs have indicated that they do not intend to introduce any evidence of the dispute concerning the RTA bus stop. Accordingly, the Court OVERRULES AS MOOT the Beavercreek Defendants' Motion to Exclude References to Dispute Between Dayton RTA and the City of Beavercreek About Bus Stops at Fairfield Commons Mall, Doc. #203.

### 5. References to Officer Williams' Tattoo (Doc. #204)

Finally, the Beavercreek Defendants ask the Court to exclude any testimony, evidence and argument concerning Officer Sean Williams' tattoo of a warthog holding a weapon. Doc. #204. They argue that such evidence is irrelevant to the claims and that any probative value it may have is outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403.

Plaintiffs, however, maintain that evidence of Williams' tattoo is relevant, particularly considering the incident in which he yelled at a group of teenagers who were making snorting noises at him. Doc. #243.

The Court finds that the probative value of such evidence is slight at best and that any probative value is substantially outweighed by the danger of unfair prejudice. Accordingly, the Court SUSTAINS the Beavercreek Defendants' motion to exclude testimony, evidence and argument concerning Officer Williams' tattoo, Doc. #204.

**C.** **Plaintiffs' Motion in Limine to Prevent References to John Crawford's Alleged Marijuana Use (Doc. #201)**

Plaintiffs ask the Court for an Order prohibiting Defendants from introducing any evidence or making any comment or argument regarding John Crawford's alleged use of marijuana. Doc. #201. Blood samples taken almost twelve hours after his death showed the presence of a trace amount of marijuana volatiles. To the extent that Defendants may seek to offer this as damaging character evidence or to argue that Crawford was comparatively negligent because, at the time he was shot, he was impaired or under the influence of marijuana, or unable to follow verbal commands given by the officers, Plaintiffs maintain that the Court should prohibit such evidence.

Plaintiffs hired a pharmacology expert, Dr. Francis Gengo, to explain the lab results. Although Dr. Gengo could not determine the exact concentrations of delta 9 tetrahydrocannabinol ("THC") in Crawford's blood at the time of the shooting, he was able to determine that the highest level possible would have been 7.5 ng/ml, a concentration so low that it would be unlikely to produce any impairment of the central nervous system ("CNS"). Doc. #201-1, PageID##12951-52. Moreover, the test results "suggest that his last use of marijuana would have been many hours prior to the time he died, long after any CNS effects would have dissipated." *Id.* at PageID#12952. Plaintiffs note that Defendants have no expert witness testimony to rebut Dr. Gengo's opinion.

16

Plaintiffs maintain that, under the circumstances presented here, evidence of Crawford's alleged marijuana use or possible impairment is irrelevant, highly prejudicial and without scientific foundation. They further argue that they should not be required to prove a negative—that the trace amounts of marijuana in Crawford's system likely produced no impairment—when there is no expert witness testimony to the contrary. In addition, Plaintiffs argue that, even if evidence of Crawford's alleged marijuana use had some probative value, it would be substantially outweighed by the danger of unfair prejudice and should be excluded under Fed. R. Evid. 403.

Neither the Beavercreek Defendants nor the Wal-Mart Defendants oppose Plaintiffs' motion. The Court agrees with Plaintiffs that, absent any expert witness testimony to rebut Dr. Gengo's report, the probative value of evidence of Crawford's alleged marijuana use would be substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Accordingly, the Court SUSTAINS Plaintiffs' unopposed motion to exclude all argument and evidence concerning Crawford's alleged marijuana use, Doc. #201.

### D. Wal-Mart's Motions in Limine (Docs. #207-210, 238-239)

#### 1. Motion in Limine #2 (Doc. #209)

Wal-Mart asks the Court to exclude any evidence or argument that the MK-177 air rifle was not in its box when John Crawford picked it up. Doc. #209. The manufacturer designed the box with a flip-up top so that it can be easily opened by customers who wish to handle the air rifle in the store. It is not clear from the

17

surveillance video whether Crawford took the air rifle out of the box or whether it was already out of the box when he picked it up. *See* Doc. #224, PageID#15651. Wal-Mart argues that, given the paucity of evidence supporting a finding that the air rifle was out of its box when Crawford picked it up, any such argument would be purely speculative and must be excluded. Wal-Mart further argues that such evidence is completely irrelevant because there is no evidence that, had the air rifle been in the box, Crawford would not have taken it out of the box and carried it through the store. *Id.*

Plaintiffs, however, argue that the video surveillance tape of Crawford in the sporting goods department supports finding that the MK-177 was unpackaged at the time Crawford picked it up. He appears to grab it as he walks past, barely breaking his stride. Doc. #222-1, PageID##15148-49. Video surveillance tape also supports a finding that the MK-177 may have been unpackaged for two days prior to that time. Doc. #222-6, PageID#15409. Plaintiffs maintain that such evidence is relevant to their claims against Wal-Mart and must be considered by the jury.

In the Court's view, the video surveillance tapes, and the reports of law enforcement officers and expert witnesses, move this issue beyond speculation. The Court rejects Wal-Mart's argument that, because Plaintiffs cannot prove that Crawford would not have picked up the rifle if it had been in its box, the evidence is irrelevant. A reasonable jury could find that if the pellet rifle were in its box, Crawford may have been more likely to heed the box's warning not to display or

18

brandish it in public because it could be mistaken for a real firearm. In addition, evidence that the pellet rifle was out of its box is directly relevant to the breach element of Plaintiffs' claims. Breach of duty may be established by showing that the pellet rifle was out of its box "for a sufficient length of time to reasonably justify the inference" that Wal-Mart's failure to remedy the problem or warn against it was "attributable to a lack of ordinary care." *Simmons v. Quarry Golf Club, LLC*, 2016-Ohio-525, ¶ 26, 60 N.E.3d 454, 460 (5th Dist.).

Accordingly, the Court OVERRULES Wal-Mart's Motion #2, seeking to exclude evidence or argument that the MK-177 air rifle was not in its box when John Crawford picked it up. Doc. #209.

### 2. Motion in Limine #3 (Doc. #208)

Wal-Mart asks the Court to exclude all evidence concerning the discipline of its employees. Doc. #208. Wal-Mart speculates that Plaintiffs seek to present evidence of routine disciplinary matters so that the jury can infer misconduct as it relates to this incident. Wal-Mart maintains, however, that there are no disciplinary issues relevant to any of the issues in this case.

Plaintiffs intend to introduce such evidence only with respect to those Wal-Mart employees that were allegedly negligent in contributing to Crawford's death. They seek to use such evidence where relevant to the credibility or impeachment of a Wal-Mart employee.

In the Court's view, this matter is better addressed in the context of the actual trial. Accordingly, the Court OVERRULES Wal-Mart's Motion in Limine #3,

Doc. #208, WITHOUT PREJUDICE to renewal at trial. Plaintiffs' counsel is directed not to mention this evidence in their opening statement and to seek to approach the bench prior to attempting to introduce any argument or evidence concerning disciplinary records of Wal-Mart employees.

### 3. Motion in Limine #4 (Doc. #210)

Wal-Mart next asks the Court to exclude any evidence or argument concerning incidents that occurred at Wal-Mart stores after Crawford's death. Doc. #210. For example, in November of 2014, a child at a store in Pennsylvania removed a BB gun from its box and left it on the floor. Another child found it and gave it to his father, who may have initially mistaken it for a real firearm. Wal-Mart maintains that evidence of incidents occurring after Crawford's death is irrelevant and must be excluded.

Plaintiffs do not intend to introduce such evidence unless Wal-Mart opens the door, or it becomes relevant for impeachment purposes. Accordingly, the Court OVERRULES AS MOOT Wal-Mart's Motion in Limine #4, Doc. #210.

### 4. Motion in Limine #5 (Doc. #207)

Wal-Mart also asks the Court for an Order excluding any argument or consideration of punitive damages against Wal-Mart. Doc. #207. Wal-Mart argues that, under the circumstances presented here, it cannot be said that Wal-Mart acted with actual malice, the prerequisite for an award of punitive damages. *See Preston v. Murty*, 32 Ohio St. 3d 334, 336, 512 N.E.2d 1174, 1176 (1987). In order to show actual malice, Plaintiffs must prove that Wal-Mart acted with

"hatred, ill-will or spirit of revenge," or that it had a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.*

Plaintiffs argue that, because Wal-Mart failed to move for summary judgment on the claim for punitive damages, it must be deemed to have waived this argument. They further argue that, based on the evidence presented, a reasonable jury could find that Wal-Mart acted in conscious disregard for the rights and safety of others.

The Court rejects both of these arguments. Although Wal-Mart could have moved for summary judgment on the request for punitive damages, its failure to do so does not constitute a waiver of that argument. Moreover, the Court agrees with Wal-Mart that Plaintiffs have not presented sufficient evidence from which a reasonable jury could find that Wal-Mart acted with actual malice. There is absolutely no evidence that Wal-Mart acted with "hatred, ill-will or a spirit" of revenge. Nor is there sufficient evidence to support a finding that Wal-Mart acted with a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."

In sustaining Wal-Mart's motion to dismiss the Wrongful Death claim, the Court found that Plaintiffs could not satisfy the "gross negligence" standard. It noted that Wal-Mart had displayed the pellet rifle as the manufacturer intended and violated no laws or industry standards. The pellet rifle box contained a conspicuous warning, and Wal-Mart had policies in place requiring employees to

conduct safety sweeps and return unpackaged merchandise to its proper place.

Moreover, when Wal-Mart learned that Crawford was carrying an unboxed MK-177

through the store, its managers immediately began looking for him.  Doc. #273,

PageID##20014-18.

For the same reasons that no reasonable jury could find that Wal-Mart was

"grossly negligent," no reasonable jury could find that Wal-Mart acted with actual

malice.  *See, e.g., Metro. Prop. & Cas. Ins. Co. v. Pest Doctor Sys., Inc.*, No.

3:14-CV-143, 2015 WL 4945767, at *6 (S.D. Ohio Aug. 20, 2015) (noting that

gross negligence requires a showing of a conscious disregard of a known risk).

The Court therefore SUSTAINS Wal-Mart's Motion in Limine #5, Doc. #207,

and excludes any argument or consideration of punitive damages against Wal-Mart.

### 5.    Motion in Limine #6 (Doc. #238)

Wal-Mart next asks the Court for an Order preventing any evidence or

argument concerning Wal-Mart's policies regarding real firearms.  Doc. #238.  It

notes that laws concerning the merchandising and sale of real firearms differ

significantly from those governing the merchandising and sale of pellet rifles.  Wal-

Mart maintains that policies concerning real firearms are therefore irrelevant and

that any probative value they might have is substantially outweighed by the danger

of unfair prejudice, confusion of the issues and misleading the jury.  *See* Fed. R.

Evid. 403.

In response, Plaintiffs argue that Wal-Mart was aware that the perceived

dangers associated with an unloaded MK-177 are the same as those associated

with an unloaded AR-15. Wal-Mart had detailed policies concerning the secured display and sale of real firearms, yet it failed to implement any policies governing how the pellet rifles should be displayed. This differing treatment goes to the very heart of Plaintiffs' claims of negligence and premises liability.

The Court agrees with Plaintiffs that evidence of Wal-Mart's policies concerning the display and sale of real firearms is relevant to Plaintiffs' claims. The Court further finds that, because the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury, such evidence is not excludable under Rule 403. Accordingly, the Court OVERRULES Wal-Mart's Motion in Limine #6, Doc. #238.

### 6. Motion in Limine #7 (Doc. #239)

Finally, Wal-Mart asks the Court to exclude Exhibit 51 to the deposition of Wal-Mart employee Joseph Bonds. Doc. #250-3, PageID##17939-41. This is an email message sent to Wal-Mart by Jeff Wilson, a Wal-Mart shopper in Minnesota. Wilson expressed his concern about two children who picked up an air rifle and pointed it at other customers. He suggested that Wal-Mart lock up its pellet rifles in the same manner it locks up real firearms because customers could load the pellet rifles and shoot them at customers, causing serious injury or death. Wilson's email message was forwarded to several Wal-Mart employees and managers, including Joseph Biddulph, Wal-Mart's Vice President who had responsibility for the sporting goods departments. Biddulph admits that he received the email

message, but does not recall how, or if, the issue was resolved. Doc. #263, PageID##19141-44.

Wal-Mart maintains that this email message is irrelevant because the danger that Wilson addresses in his email message—the possible use of the pellet rifle to injure other customers—is different from the risk at issue in this case, the danger that may arise when other customers believe the pellet rifle to be a real firearm. Wal-Mart also argues that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. In addition, Wal-Mart contends that Wilson's email message is inadmissible hearsay.

Plaintiffs argue that this email message is relevant and admissible. It shows that Wal-Mart had actual notice of hazards associated with the unsecured display of pellet rifles and yet failed to take action to protect its business invitees. Plaintiffs also argue that, because the email message is not offered for the truth of the matter asserted, but rather to show that Wal-Mart was on notice of customer concerns related to its display of pellet rifles, it is not inadmissible hearsay.

The Court agrees that, because it is not offered for the truth of the matter asserted but to show notice, the email message does not constitute inadmissible hearsay. The Court further finds that, even though the email message addresses a different risk than the one at issue in this case, it is nevertheless probative on the question of whether Wal-Mart breached a duty of care to protect its business invitees from foreseeable dangers associated with the unsecured display of pellet

24

rifles. In the Court's view, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or confusion of the issues.

Accordingly, the Court OVERRULES Wal-Mart's Motion in Limine #7, Doc. #239.


III.    **Conclusion**

For the reasons set forth above, the Court:

- SUSTAINS the Beavercreek Defendants' Motion in Limine Regarding Defendant Williams' Use of Force History and Response to Resistance/Use of Force Data (Doc. #190);
- SUSTAINS the Beavercreek Defendants' Motion in Limine Regarding Defendant Williams' Prior Use of Deadly Force (Doc. #192);
- OVERRULES WITHOUT PREJUDICE the Beavercreek Defendants' Motion in Limine Regarding References to the Terms "Toy Gun," "Air Gun," "Air Rifle," "Pellet Gun," "Pellet Rifle," and "BB Gun" (Doc. #191);
- OVERRULES AS MOOT the Beavercreek Defendants' Motion in Limine Regarding References to Other Publicized Incidents (Doc. #193);
- OVERRULES AS MOOT the Beavercreek Defendants' Motion in Limine Regarding Dispute Between Dayton RTA and the City of Beavercreek About Bus Stops at Fairfield Commons Mall (Doc. #203);
- SUSTAINS the Beavercreek Defendants' Motion in Limine Regarding Defendant Williams' Tattoo (Doc. #204);
- SUSTAINS Plaintiffs' Motion in Limine to Prevent References to John Crawford's Alleged Marijuana Use (Doc. #201);
- OVERRULES Wal-Mart's Motion in Limine #2 (Doc. #209);
- OVERRULES WITHOUT PREJUDICE Wal-Mart's Motion in Limine #3 (Doc. #208);

- OVERRULES AS MOOT Wal-Mart's Motion in Limine #4 (Doc. #210);
- SUSTAINS Wal-Mart's Motion in Limine #5 (Doc. #207);
- OVERRULES Wal-Mart's Motion in Limine #6 (Doc. #238); and
- OVERRULES Wal-Mart's Motion in Limine #7 (Doc. #239).


Date: January 31, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE