IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRESSA SHERROD, *et al.*,

      Plaintiffs,

      v.

WAL-MART STORES, INC., *et al.*,

      Defendants.

:

:      Case No. 3:14-cv-454

:      JUDGE WALTER H. RICE

:

---

DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR
RECONSIDERATION OF COURT'S RULING DISMISSING
PLAINTIFFS' WRONGFUL DEATH CLAIM (DOC. #319);
OVERRULING WAL-MART'S MOTION FOR RECONSIDERATION ON
SURVIVORSHIP CLAIM (DOC. #324); CONFERENCE CALL SET FOR
FEBURARY 23, 2021, TO DISCUSS PLAINTIFFS' ALTERNATIVE
MOTION REQUESTING RULE 54(b) CERTIFICATION (DOC. #319)
ON WRONGFUL DEATH CLAIM (COUNT 14) AND STAYING CASE
PENDING APPEAL

---

Officer Sean Williams and Sergeant David Darkow, of the Beavercreek

Police Department, responded to a 911 call involving a person with an assault rifle

inside the Beavercreek Wal-Mart store. Wal-Mart shopper Ronald Ritchie, the 911

caller, told the dispatcher that this individual was loading the gun and pointing it

at people. The officers found John Crawford, III, alone in the pet aisle, holding

what appeared to be a loaded rifle. With their weapons drawn, they commanded

him to drop the gun. As he turned toward them, Officer Williams fired two shots,

killing Crawford. It was later discovered that Crawford was carrying an

unpackaged, unloaded pellet rifle that he had picked up in the sporting goods section of the store.

Tressa Sherrod, the executrix of Crawford's estate, and other family members filed suit against the City of Beavercreek, Officer Williams, Sergeant Darkow, and Beavercreek Police Chief Dennis Evers. Plaintiffs have settled all claims against these Beavercreek Defendants.

Plaintiffs also filed several claims against Wal-Mart. On January 28, 2019, the Court sustained in part and overruled in part Defendant Wal-Mart's Motion for Summary Judgment. Doc. #273. In that Decision and Entry, the Court denied summary judgment on Plaintiffs' claims of negligence (Count 11), premises liability (Count 12), survivorship (Count 13), and loss of consortium (Counts 15-17), but granted summary judgment in Wal-Mart's favor on Plaintiffs' wrongful death claim (Count 14).

Plaintiffs engaged in extensive settlement discussions with Wal-Mart, but maintain that the Court's ruling on the wrongful death claim is a major stumbling block. During a conference call held on September 14, 2020, the Court invited Plaintiffs to file a motion for reconsideration and motion for certification under Fed. R. Civ. P. 54(b). On October 13, 2020, Plaintiffs filed their Motion for Reconsideration of Court's Ruling Dismissing Wrongful Death Claim, or in the alternative, Motion Requesting a Rule 54 Certification, Doc. #319. Wal-Mart filed its memorandum in opposition on November 24, 2020. Doc. #324. Therein, Wal-Mart asked the Court to also reconsider its ruling on the survivorship claim.

2

I.     Background and Procedural History

The relevant facts are set forth in this Court's January 28, 2019, Decision and Entry, Doc. #273, PageID##19983-87, and will not be repeated here. Before turning to the pending motion, a brief recap of the Court's ruling on Wal-Mart's Motion for Summary Judgment is in order.

A.     Negligence, Premises Liability, Survivorship, Loss of Consortium

The Court concluded that genuine issues of material fact precluded summary judgment on Plaintiffs' claims of negligence (Count 11) and premises liability (Count 12). The Court held, as a matter of law, that Wal-Mart had a duty to protect its business invitees from the dangers associated with the unsecured display of the pellet rifle. Doc. #273, PageID##19997-20001. The Court then held that a reasonable jury could find that Wal-Mart breached that duty by failing to secure the pellet rifle while it was on display, by failing to return it to its box, and/or by failing to locate Crawford in a timely manner to warn him of the dangers associated with carrying the unpackaged pellet rifle through the store. *Id.* at PageID##20001-07.

On the issue of proximate cause, the Court found that a reasonable jury could find that: (1) Wal-Mart's alleged negligence was a proximate cause of Crawford's death; (2) Wal-Mart's conduct combined with the conduct of others to create a single, indivisible injury; and (3) Crawford's death was a foreseeable, natural consequence of Wal-Mart's alleged negligence. The Court further concluded that there was a genuine issue of material fact as to whether Ronald

3

Ritchie's 911 call and/or Officer Williams' use of deadly force were intervening, superseding causes, such that Wal-Mart would be absolved of liability. *Id.* at PageID##2007-14.

Given that the claims of negligence and premises liability remained for trial, the Court refused to dismiss the claims of survivorship (Count 13) and loss of consortium (Counts 15-17).[1] *Id.* at PageID##20018-19.

B.    Wrongful Death

The Court's dismissal of Plaintiffs' wrongful death claim (Count 14) is the subject of Plaintiffs' Motion for Reconsideration. Dismissal of this claim was based on the language of Ohio Revised Code § 2125.01, and on the Second District Court of Appeals' interpretation of this statute in *Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 103 Ohio App.3d 213, 658 N.E.2d 1140 (2d Dist. 1995).

1.    Ohio Revised Code § 2125.01

Wrongful death claims are governed by Ohio Revised Code § 2125.01. The statute provides, in relevant part, as follows:

> When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it aggravated murder, murder, or manslaughter. . . . *No action for the wrongful death of a person may be maintained against the owner or lessee of the real property upon which the death occurred if the cause of the death was the violent*

---

[1] Wal-Mart had not moved for summary judgment on any of these claims.

4

> *unprovoked act of a party other than the owner, lessee, or a person*
> *under the control of the owner or lessee, unless the acts or omissions*
> *of the owner, lessee, or person under the control of the owner or*
> *lessee constitute gross negligence.*

Ohio Rev. Code § 2125.01 (emphasis added).[2]

In the instant case, the italicized sentence governs the question of whether Wal-Mart can be held liable, on a wrongful death claim, for Officer Williams' shooting death of John Crawford, III.

### 2. *Monnin v. Fifth Third Bank of Miami Valley*

In *Monnin*, a bank robber shot and killed two people after one of the bank employees told him that she knew his mother.  Personal representatives of the deceased filed a wrongful death claim against the bank.  The Second District Court of Appeals held that the trial court erred in dismissing this claim on summary judgment.  The court held that § 2125.01:

> operates to bar a wrongful death action brought against the owner or
> operator of a premises for a death caused by the violent act of a third
> person while on the premises unless (1) the cause proximately
> resulted from the gross negligence of the owner or operator, or (2)
> the cause was provoked by the owner or operator's act or omission.

*Monnin*, 103 Ohio App. 3d at 228, 658 N.E.2d at 1150.

The court found nothing in the record to support a finding of gross negligence on the part of the bank.  However, it concluded that a reasonable jury

---

[2]  As noted in *Monnin*, "[a]ctions for wrongful death and survivorship are statutory, and operate as exceptions to the common-law rule that death terminates all claims for relief that otherwise might be brought."  103 Ohio App.3d at 227, 658 N.E.2d at 1149.

could find that the cause of death was "provoked" by the bank employee who told the robber that she knew his mother, and that the bank could be liable for her conduct. The court explained as follows:

> To "provoke" is: "To excite; to stimulate; to arouse; to irritate, or enrage." Black's Law Dictionary (5 Ed.1990) 1225. Whether provocation has occurred looks to the act which is alleged to be provocation and to the result it creates, not to the purposes or motivation of the person who offers the alleged provocation. Thus, the provocation may be intentional or it may be inadvertent. R.C. 2125.01 expresses no restriction as to either kind for a wrongful death action founded on premises liability. Therefore, the act or acts which provoke the cause of death may be negligent as well as intentional for purposes of R.C. 2125.01.

*Id.* The court concluded that a reasonable jury could find that, although the bank employee did not act with any malicious purpose, her statement may have provoked the robber to shoot because he was afraid that he could be identified. *Id.* at 229, 658 N.E.2d at 1150.

### 3. Court's Application of Relevant Law

In applying the above law to Plaintiffs' wrongful death claim, the Court held that, based on the evidence presented, Wal-Mart was not grossly negligent. It also held that no reasonable jury could find that Wal-Mart's alleged negligence somehow "provoked" Officer Williams to shoot Crawford. The Court held that "[a]lthough Wal-Mart's alleged acts or omissions may very well be a *proximate cause* of Crawford's death, they did not 'provoke' Williams' decision to use deadly force." Doc. #273, PageID#20017. The Court explained that, in contrast to

6

*Monnin*, "no Wal-Mart employee had any interaction with Officer Williams that could be deemed to have 'provoked' him to pull the trigger." *Id.* Moreover,

> the Wal-Mart managers did not even know that Ronald Ritchie had called 911 or that the officers had entered the store. Likewise, Williams did not know whether Crawford had carried the rifle into the store or had picked it up inside Wal-Mart. Doc. #121, PageID##2495-96. Nor did he know that it was a pellet rifle. He testified that he shot at Crawford because he believed that Crawford was aggressively turning toward him with what appeared to be a loaded assault rifle. Wal-Mart's alleged negligence in failing to properly secure the pellet rifle and failing to return it to its package played no part in Williams' assessment of the need for deadly force. *Id.* at PageID#2496.

*Id.* The Court therefore concluded that "[a]lthough Wal-Mart's alleged negligence may have created the situation that led to Crawford's death, Wal-Mart's alleged 'provocation' is simply too attenuated to support a wrongful death claim under Ohio law." *Id.* at PageID#20018.


II.    Motions for Reconsideration

A.    Applicable Law

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. Motions for reconsideration are often treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), if filed within 28 days after the entry of judgment. In this case, however, because no final judgment has been entered, Rule 59(e) is inapplicable. *See Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005) (holding that because there was

no final judgment when the court entertained the motion for reconsideration, Rule 59(e) did not apply)

Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). *See also Am. Civil Liberties Union of Ky. v. McCreary Cty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (noting that where the district court has not yet entered final judgment, it is "free to reconsider or reverse its decision for any reason.").

Typically, however, courts will reconsider an interlocutory order only when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/ Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quotation omitted). *See also Northeast Ohio Coalition for Homeless v. Brunner*, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009) ("Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier.").

B.    Plaintiffs' Motion for Reconsideration (Doc. #319)

As previously noted, the *Monnin* court held that, under § 2125.01, a plaintiff can recover damages on a wrongful death claim brought against the owner of the premises where a third person has caused a "violent unprovoked death" only if

the plaintiff proves that: (1) the cause of death was the proximate result of the owner's gross negligence; or (2) the cause of death was provoked by the owner. *Monnin*, 103 Ohio App. 3d at 228, 658 N.E.2d at 1150.

Plaintiffs do not challenge the Court's finding that Crawford's violent death, at the hands of Officer Williams, did not proximately result from Wal-Mart's *gross negligence.* They argue, however, that the Court erred in holding that no reasonable jury could find that Wal-Mart "provoked" Williams to shoot Crawford.

As a threshold matter, the Court must address Wal-Mart's argument that Plaintiffs are judicially estopped from arguing that Crawford's death was *provoked*.[3] Wal-Mart notes that, in this litigation, Plaintiffs have consistently taken the position that Crawford's death was *unprovoked*, *i.e.,* that he did nothing to warrant being shot. Wal-Mart argues that Plaintiffs are bound by these factual admissions. The Court rejects this argument, because the question of whether *Crawford* did anything to provoke Officer Williams to pull the trigger is clearly distinguishable from the question of whether *Wal-Mart* did anything to provoke the shooting. The Court therefore turns to the merits of Plaintiffs' motion.

According to Plaintiffs, the Court applied an overly restrictive test in determining what constitutes a "provocation," and improperly imposed a

---

[3] "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008).

heightened causation requirement. Plaintiffs note that, in denying summary judgment on the claims of negligence and premises liability, the Court held that a reasonable jury could find that Wal-Mart's alleged negligence, in failing to secure the MK-177, was a proximate cause of Crawford's death. The Court held that "a reasonable jury could find that Crawford's death was the culmination of a natural and continuous sequence of events which produced a result which would not have occurred without Wal-Mart's alleged negligence in failing to secure the MK-177." Doc. #273, PageID#20010. In so holding, the Court noted that "[b]ut for Crawford's ability to pick up the unpackaged MK-177 and carry it through the store, Ritchie would not have called 911 and Williams would not have shot Crawford." *Id.*

Plaintiffs maintain that this holding on the issue of *proximate cause* cannot be squared with the Court's holding that Wal-Mart's alleged negligence cannot be deemed to have "provoked" Williams' decision to use deadly force such that Wal-Mart can be held liable on the wrongful death claim. More specifically, Plaintiffs challenge the Court's conclusion that "[a]lthough Wal-Mart's alleged negligence may have created the situation that led to Crawford's death, Wal-Mart's alleged 'provocation' is simply too attenuated to support a wrongful death claim under Ohio law." *Id.* at PageID#20018.

Plaintiffs argue that nothing in the wrongful death statute requires the "provocation" to be an immediate, direct cause, or predominant cause of the third party's decision to use violence. According to Plaintiffs, a reasonable jury could

find that Wal-Mart's negligence proximately caused Williams to believe the gun was real, and "Williams' lack of restraint and judgment before opening fire indicates that his belief the gun was real may have been the only thing he considered before he pulled the trigger." Doc. #320, PageID#20566.

There are several problems with Plaintiffs' arguments. First, as Wal-Mart notes, Plaintiffs improperly conflate the concepts of "proximate cause" and "provocation." In denying summary judgment on the negligence and premises liability claims, the Court explained that there can be more than one proximate cause of an injury. It concluded that a reasonable jury could find that Wal-Mart's alleged negligence combined with the conduct of others to cause Crawford's death, and could also find that his death was a foreseeable, natural consequence of Wal-Mart's alleged negligence. Doc. #273, PageID##20007-11.

However, the legal principles relevant to this proximate cause determination on the claims of negligence and premises liability are clearly distinguishable from the question of whether Wal-Mart can be deemed to have "provoked" Officer Williams to shoot John Crawford such that Wal-Mart might be held liable on Plaintiffs' wrongful death claim.

As Wal-Mart notes, the word "provoked" is not found anywhere in the statute. Rather, the statute refers only to "the violent *unprovoked* act of a party other than the owner." Ohio Rev. Code § 2125.01 (emphasis added). *Monnin* nevertheless interpreted this statute to impose liability for wrongful death on a

property owner whose conduct "provoked" the act that caused the decedent's death.

Plaintiffs argue that nothing in the language of § 2125.01 requires the owner's alleged "provocation" to be an immediate, direct cause, or predominant cause of the third party's decision to use violence. Likewise, *Monnin* does not address the question of how far removed the "act" can be from the "result it creates." Nevertheless, the facts of *Monnin* give rise to an inference that the relevant "act" must be an immediate, direct cause of the third party's decision to use violence. There, the court held that a reasonable jury could find that the bank employee's statement to the robber that she knew his mother "provoked" his decision to kill two people during the course of that robbery. Moreover, the very word "provoke" evokes a sense of immediacy.

The word "provoke" also implies the need for some affirmative act on the part of the property owner. Citing Black's Law Dictionary, the *Monnin* court defined "provoke" with "action" verbs: "To excite, to stimulate; to arouse; to irritate, or engage." The court then held that "[w]hether provocation has occurred looks to the *act* which is alleged to be provocation and to the result it creates." *Monnin*, 103 Ohio App.3d at 228-29, 658 N.E.2d at 1150 (emphasis added).

In sharp contrast to *Monnin*, Wal-Mart's alleged wrongdoing does not involve any affirmative "acts," but rather "failures to act." Wal-Mart allegedly breached its duty by *failing* to secure the pellet rifle while it was on display, by *failing* to return it to its box, and by *failing* to locate Crawford in a timely manner

12

to warn him of the dangers associated with carrying the unpackaged pellet rifle through the store. Although there might be a unique situation in which a property owner's *failure to act* somehow "provokes" a third party to violently kill someone on the premises, this is not one of those cases.

Wal-Mart's alleged failures to act may have set in motion the chain of events that allowed Crawford to carry the unpackaged rifle through the store, which led Ronald Ritchie to call 911, which resulted in Officer Williams and Sergeant Darkow being dispatched to the store, and which ultimately resulted in Officer Williams shooting and killing Crawford. However, in sharp contrast to the bank employee in *Monnin*, no Wal-Mart employee had any direct contact with Officer Williams prior to the shooting. Under the circumstances presented here, Wal-Mart's alleged failures to act cannot be deemed to have "provoked" Officer Williams to shoot Crawford. As previously held, the causal connection is too attenuated.

Moreover, the undisputed facts of this case show that, even though Officer Williams believed that Crawford was carrying a real firearm, Doc. #121, PageID#2439, this is not why he shot him. Officer Williams acknowledged that, because Ohio is an "open carry" state, Crawford was legally entitled to carry a loaded firearm inside the store. He repeatedly testified that he shot Crawford only because Crawford turned toward him in an aggressive manner with the gun, leading Williams to fear for his own safety and that of others. *Id.* at PageID##2435, 2439, 2459, 2467. Based on the evidence presented, no reasonable

jury could find that Wal-Mart's alleged wrongdoing, which allowed Crawford to carry the unpackaged pellet gun through the store, somehow "provoked" Williams to shoot him.

The Court concludes that Plaintiffs have failed to establish that the Court committed clear error. For the reasons set forth above, the Court OVERRULES Plaintiffs' Motion for Reconsideration of Court's Ruling Dismissing Plaintiffs' Wrongful Death Claim, Doc. #319.[4]

C.    Wal-Mart's Motion for Reconsideration (Doc. #324)

In its memorandum in opposition to Plaintiffs' Motion for Reconsideration, Doc. #324, Wal-Mart moves for reconsideration on the survivorship claim. Wal-Mart maintains that it is entitled to summary judgment on that claim. It argues that, because Crawford was legally entitled to carry the pellet rifle through the Wal-Mart store, Wal-Mart cannot be held liable for allowing him to do so, merely because Officer Williams happened to shoot him while he was engaged in that conduct. According to Wal-Mart, it is inconsistent for the Court to grant summary

---

[4] Given the Court's ruling, it need not, and does not, address Wal-Mart's alternative arguments that the wrongful death claim also fails because: (1) Williams' conduct was an unforeseeable intervening and superseding cause; (2) there is no overwhelming evidence that the shooting was foreseeable; (3) carrying the unpackaged rifle through the store was an open and obvious danger; and (4) adequate warnings were given. The Court notes, however, that, in ruling on the claims of *negligence and premises liability*, the Court found that genuine issues of material fact precluded summary judgment on each of these issues.

judgment in favor of Wal-Mart on the wrongful death claim but not on the survivorship claim.

The Court rejects Wal-Mart's arguments. Summary judgment is warranted on the wrongful death claim *only* because Wal-Mart was not grossly negligent and Wal-Mart's alleged wrongdoing did not "provoke" Williams to shoot Crawford. Whether Crawford was legally entitled to carry the pellet rifle through the store plays no part in determining whether Plaintiffs can satisfy these § 2125.01 requirements in order to proceed on the wrongful death claim. It may, however, be relevant to Plaintiffs' claims of negligence and premises liability.

Any perceived inconsistency in granting summary judgment on the wrongful death claim, but not on the survivorship claim is attributable only to the fact that the legislature chose to impose a heightened standard of liability with respect to *wrongful death* claims asserted against premises owners where the decedent's death is caused by the violent unprovoked act of a third party. The legislature imposed no similar heightened standard for a *survivorship* claim.

As explained in the previous Decision and Entry, Doc. #273, PageID#20018, because genuine issues of material fact preclude summary judgment on the claims of negligence and premises liability, summary judgment is not warranted on the survivorship claim. The Court therefore OVERRULES Wal-Mart's motion for reconsideration, Doc. #324.


III.    Plaintiffs' Alternative Motion Requesting Rule 54 Certification (Doc. #319)

15

In the event the Court denies Plaintiffs' Motion for Reconsideration, Plaintiffs ask the Court to enter final judgment on the wrongful death claim, pursuant to Fed. R. Civ. P. 54(b), so that they can immediately appeal dismissal of that claim. Rule 54(b), which represents an exception to the general federal policy against piecemeal appeals, provides, in relevant part:

> (b) *Judgment on Multiple Claims or Involving Multiple Parties*. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). If the court enters final judgment on just one claim, it must "*clearly explain* why it has concluded that immediate review of the challenged ruling is desirable." *Daleure v. Commonwealth of Ky.*, 269 F.3d 540, 543 (6th Cir. 2001) (quoting *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994)).

Factors to be considered in making a Rule 54(b) determination include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneering, Inc. v. Thyssen Env'tl Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986) (quotation omitted).

In *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980), the Supreme Court noted that the presence of one of these factors does not necessarily render Rule 54(b) certification improper. It noted, for example, that even if there was a possibility that the same issue may need to be addressed in a subsequent appeal, this "might perhaps be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." *Id.* at 8 n.2.

Having considered the parties' briefs, and all relevant factors, the Court finds that this is one of those infrequent cases in which Rule 54(b) certification may be warranted and that there is no just reason for delay.

As an initial matter, the Court rejects Wal-Mart's argument that, because the dismissal of the wrongful death claim did not resolve a "distinct" claim, certification must be denied. *See Novia Commc'ns, LLC v. Weatherby*, 798 F. App'x 890, 893 (6th Cir. 2020) (holding that that certification is not warranted unless the court has "fully resolved a distinct 'claim.'"). Plaintiffs' wrongful death claim is set forth as a separate count in the Complaint. As Wal-Mart notes, however, the mere fact that a claim is separately pleaded does not necessarily mean that it is "distinct" for purposes of Rule 54(b) certification. *Id.* The relevant question is whether the adjudicated and unadjudicated claims arise from an "aggregate of operative facts which give rise to a right enforceable in the courts." *See Gen. Acquisition,* 23 F.3d at 1028 (quotation omitted). Wal-Mart argues that, because Plaintiffs' wrongful death claim arises from the same set of operative

17

facts that give rise to the claims of negligence, premises liability and survivorship, it cannot be considered a "distinct" claim for purposes of Rule 54(b).

The Court disagrees. As the Sixth Circuit has further explained, not only must the claims at issue arise from the same set of operative facts, but they must also "seek to recover for the same underlying injury." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th Cir. 2019) (quoting *Lowery v. Fed. Exp. Corp.*, 426 F.3d 817, 821 (6th Cir. 2005)).

Here, each of Plaintiffs' remaining claims against Wal-Mart arises from the same set of operative facts, stemming from Wal-Mart's alleged negligence in failing to secure the pellet rifles that were on display, failing to return the pellet rifle that Crawford picked up to its box, and failing to timely find Crawford to warn him of the dangers of carrying the unpackaged rifle through the store. However, the claims do not seek to recover for the same underlying injury.

The Ohio Supreme Court has held that, even though wrongful death claims "share many of the same issues as survival claims asserted against the same defendant," they are "distinct claims that belong to separate individuals." *Peters v. Columbus Steel Castings Co.,* 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, at ¶¶ 16-17. "[W]hen an individual is killed by the wrongful act of another, the personal representative of the decedent's estate may bring a survival action *for the decedent's own injuries* leading to his or her death as well as a wrongful-death action *for the injuries suffered by the beneficiaries of the decedent* as a result of the death." *Id.* at ¶ 11 (emphasis in original). For this reason, the Court

finds that Plaintiffs' wrongful death claim is distinct from the survivorship claim for purposes of Rule 54(b) certification.

Having considered the parties' briefs and the above factors, the Court is inclined to find that this is one of those infrequent cases in which Rule 54(b) certification is warranted, and that there is no just reason to delay the entry of final judgment on the wrongful death claim. The Court dismissed the wrongful death claim against Wal-Mart because it concluded that no reasonable jury could find that Wal-Mart was grossly negligent or that Wal-Mart "provoked" Officer Williams to shoot John Crawford, III. This meant that the wrongful death claim against Wal-Mart was barred by Ohio Revised Code § 2125.01. As a result of this ruling, Plaintiffs will try their remaining claims of negligence and premises liability to a jury, but damages will be limited to those that Crawford himself could have recovered had he survived his injuries, *i.e.,* the survivorship claim. *See* Ohio Revised Code § 2305.21.

Counsel have indicated that the Court's ruling on the wrongful death claim is a major stumbling block to settling the case. This is not surprising given its impact on the scope of damages available to Plaintiffs. If Plaintiffs are limited to the survivorship claim, they can recover only for the injuries Crawford suffered before his death, *i.e.,* any conscious pain and suffering for the few minutes he remained alive after being shot. On the other hand, if Plaintiffs can proceed on their wrongful death claim, this opens the door to *prospective* damages available to his heirs under Ohio Revised Code § 2125.02(B). Plaintiffs' counsel has

19

indicated that it is all but certain that any trial excluding a claim for damages for wrongful death will result in an appeal. Accordingly, it does not appear that the need for appellate review might be mooted by future developments.

Moreover, it is highly unlikely that the appellate court would be obliged to consider for a second time the question of whether a reasonable jury could find that Wal-Mart's conduct "provoked" Williams to shoot Crawford such that Wal-Mart could be held liable on the wrongful death claim under § 2125.02. The Sixth Circuit's decision on this discrete issue simply resolves the question of whether, under this particular set of facts, Plaintiffs may proceed to trial on their wrongful death claim against Wal-Mart. That decision will not need to be revisited on any later, post-trial appeal by either party. In addition, there is no pending claim or counterclaim that could result in a set-off against the judgment on the wrongful death claim.

Wal-Mart correctly notes that entering final judgment on the wrongful death claim and certifying it under Rule 54(b) will likely result in further delay. The Court notes that COVID-19-related concerns have already pushed the trial date in this case to June of 2021. Nevertheless, in terms of judicial economy, the Court tends to believe that, under the circumstances presented here, it makes sense to allow Plaintiffs to immediately appeal the dismissal of the wrongful death claim. The outcome of the appeal will determine the scope of damages available to Plaintiffs should they succeed on their negligence and/or premises liability claims against Wal-Mart.

20

If the Sixth Circuit agrees that no reasonable jury could find that Wal-Mart "provoked" the shooting, and that the wrongful death claim therefore was properly dismissed, the parties can then reevaluate their settlement positions and perhaps settle all remaining claims, or go to trial with damages limited to those available under § 2305.21. If, however, the Sixth Circuit finds that there is a genuine issue of material fact as to whether Wal-Mart "provoked" the shooting, then "the bar provided by R.C. 2125.01 falls." *Monnin*, 103 Ohio App. 3d at 229, 658 N.E.2d at 1150. If Plaintiffs succeed on their claims of negligence or premises liability, they could then pursue damages for wrongful death in addition to those available on the survivorship claim. *Id.*

Although the Court is inclined to sustain Plaintiffs' alternative motion for certification under Fed. R. Civ. P. 54(b), Doc. #319, it would like to discuss this matter with counsel prior to making a final decision. Accordingly, the Court will hold a conference call on February 23, 2021, at 4:00 p.m.


IV.     Conclusion

For the reasons set forth above, the Court OVERRULES Plaintiffs' Motion for Reconsideration of Court's Ruling Dismissing Plaintiffs' Wrongful Death Claim, Doc. #319, and Wal-Mart's Motion for Reconsideration of the Court's refusal to dismiss Plaintiffs' Survivorship claim. Doc. #324.

A conference call will be held on February 23, 2012, at 4:00 p.m., to discuss Plaintiffs' alternative Motion Requesting a Rule 54 Certification, Doc. #319, on the wrongful death claim.


Date: February 12, 2021

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE